STATE OF NEBRASKA, APPELLEE, V.
L.T. THOMAS, APPELLANT.

685 N.W.2d 69

Filed August 13, 2004. No. S-03-257.

James Walter Crampton for appellant.

Jon Bruning, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

In *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002) (*Thomas I*), this court affirmed L.T. Thomas' convictions for

second degree murder, first degree assault, and two counts of use of a firearm to commit a felony. Concluding, however, that the evidence was insufficient to sustain a finding that Thomas was a habitual criminal, we vacated the sentences and remanded the cause to the district court for Douglas County with directions to conduct a new enhancement hearing and resentence Thomas. *Id.* Following our remand, Thomas filed a motion to recuse the judge to whom the case had been assigned and a motion in arrest of judgment. The district court denied both motions. After conducting an enhancement hearing pursuant to our mandate, the district court determined that Thomas was a habitual criminal and sentenced him accordingly. Thomas now appeals from these rulings.

## BACKGROUND

The facts pertinent to this criminal prosecution are set forth in detail in *Thomas I*, and we summarize them here only to the extent necessary to provide context for the issues presented in this appeal. In June 1994, Thomas shot two men in a car who were near the Stage II lounge in Omaha. Thomas claimed that he shot at the men in self-defense after they had threatened him with a gun. The driver, Phillip White, was shot in the left leg and subsequently crashed into a building as he attempted to drive to a hospital at a high rate of speed. White later died as the result of the head injuries he received in the crash. The other man, Rafael Petitphait, was shot three times but survived.

Thomas was charged with first degree murder, first degree assault, and two counts of the use of a firearm to commit a felony. An amended information added a charge that Thomas was a habitual criminal. District Judge Stephen A. Davis presided over Thomas' trial, which was held from January 24 to February 7, 1995. Aybar Crawford testified for the State that he saw Thomas shoot the men in the car and that he did not see or hear either of the men threaten Thomas. On cross-examination, Crawford testified that no promises had been made to him in exchange for his testimony. During a recess, the State informed Thomas' counsel that Crawford had a pending felony conviction for which he was yet to be sentenced. On recross-examination, Crawford testified that he could not benefit from any leniency

regarding the pending felony conviction because he would be returned to California for a probation violation. On redirect examination by the State, Crawford again denied that anyone had made any promises to him. The jury found Thomas guilty of the lesser-included offense of second degree murder, first degree assault, and two counts of use of a firearm to commit a felony.

At an enhancement hearing held on July 26, 1995, the State introduced certified copies of unsigned journal entries purporting to show that Thomas had two felony convictions: a 1989 conviction for attempted possession of a controlled substance with intent to deliver, for which he was sentenced to a prison term of 6 to 12 years, and a 1984 conviction for second degree assault, for which he was sentenced to a prison term of 18 to 24 months. The State also introduced "pen packs," or certified copies from the Department of Correctional Services, showing Thomas' commitment and discharge dates for both periods of incarceration, including his photographs and fingerprints. Judge Davis thereafter found Thomas to be a habitual criminal and sentenced him to prison terms of 20 years to life for second degree murder, 12 to 14 years for the use of a firearm to commit second degree murder, 12 to 14 years for first degree assault, and 10 to 12 years for the use of a firearm to commit first degree assault. All sentences were ordered to be served consecutively. Following his sentencing, Thomas filed a motion for new trial and two supplemental motions for new trial. He subsequently clarified his intent that the supplemental motions be considered as part of the original motion. All three motions were overruled.

Thomas' direct appeal was dismissed because his poverty affidavit was signed by trial counsel rather than by Thomas. See *State v. Thomas*, 4 Neb. App. xlix (No. A-95-1313, Jan. 9, 1996). In response to a motion for postconviction relief, he was granted a new direct appeal. The court did not consider Thomas' other grounds for postconviction relief. Thomas then concurrently filed an appeal from the postconviction order and a new direct appeal. His appeal of the postconviction order was dismissed without prejudice upon the State's motion for summary affirmance.

In the direct appeal, we affirmed all of Thomas' convictions but vacated his sentences because we determined that the evidence received at the enhancement hearing was insufficient to

support a finding that Thomas was a habitual criminal. We there-fore remanded the cause "with directions for a new enhancement hearing and for resentencing." *Thomas I*, 262 Neb. at 1016, 637 N.W.2d at 661.

Upon remand, the case was assigned to Judge Richard J. Spethman because Judge Davis had retired. Thomas filed a motion to recuse Judge Spethman on the ground that he had obtained information from sources outside the record by virtue of presiding over sentencing and parole revocation proceedings involving Crawford in 1995. Thomas also filed a motion to quash the information charging him with second degree murder on the ground that it was based upon an unconstitutional statute, a motion in arrest of judgment on the same ground, and a motion seeking a new trial or an evidentiary hearing on his postconviction claims.

At a hearing on the motion to recuse, the court received evi-dence consisting of the transcript from the 1995 proceedings involving Crawford over which Judge Spethman had presided. The transcript reflects that on May 3, 1994, Crawford pled guilty to a charge of possession of a controlled substance in exchange for the State's dismissing an identical charge filed as a result of a separate incident. Crawford remained free on bond pending his sentencing. That sentencing did not take place until May 31, 1995, over a year after Crawford's plea and subsequent to the conclusion of Thomas' trial. During Crawford's sentenc-ing hearing, his attorney asked that he be placed on probation, in part because he had assisted the State by testifying at Thomas' trial. Crawford's attorney further related that as a result of that cooperation, Crawford was subjected to physical attacks and threats. In response, Judge Spethman stated:

> I had you [Crawford] down for penitentiary time until such time as I found out, and I talked to the authorities about what you did in fact do and the risk that you put yourself in in doing it. I'm going to . . . give you one year [of probation]. I'm making it a short time to make it easier on you . . . .

Judge Spethman further stated that he "was really debating what to do with this gentleman. He did us a great service, I know that, in cooperating with the authorities."

The evidence reflects that in November 1995, Crawford again appeared before Judge Spethman on a charge of parole violation. In reviewing the case history, the court was initially confused as to whether Crawford had been sentenced in May 1994 or May 1995. When his counsel clarified that the sentencing was in 1995, Judge Spethman stated:

That's what I thought, that we waited until about a year until we saw what your cooperation was like and it was fine. And that's the main reason I put you on probation. But you're not going to be able to ride that help that you gave the Omaha police any further, you know. You've got to do what all the other probationers do.

In support of the motion to recuse, Thomas' counsel argued that while Judge Spethman had done nothing improper in presiding over the Crawford proceedings, the information gained in those proceedings would make it improper for him to preside over Thomas' case following our remand. Judge Spethman stated on the record that he had no independent recollection of Crawford's case even after considering the transcript and that there was no reasonable basis for any claim of prejudice against Thomas with respect to the issues to be considered on remand from this court. He therefore overruled the motion to recuse.

The enhancement hearing was conducted on October 3, 2002. On the same day, Thomas filed a motion to reconsider the court's ruling on the motion for recusal or to grant Thomas a new trial on the recusal motion based on newly discovered evidence consisting of the deposition of Donald Schense, the prosecutor in Thomas' case. The motion alleged that the deposition showed that Schense had spoken to Judge Spethman about Crawford's cooperation and that Crawford had received a benefit for his cooperation. In considering this motion at the commencement of the enhancement hearing, the court requested a summary of Schense's deposition. Counsel for Thomas stated that he had taken Schense's deposition in the postconviction action and that Schense had indicated that he probably did talk to Judge Spethman regarding Crawford's cooperation. In response, Judge Spethman stated that he did not deny that the communication had occurred but concluded that it did not constitute grounds for his recusal in this case. The court therefore declined to receive

Schense's deposition and overruled the motion for reconsideration. It also overruled Thomas' remaining pending motions, including the motion in arrest of judgment, reasoning that Thomas had failed to raise the issues presented in the motions at the trial level.

At the commencement of the enhancement hearing, the court announced the title of the case and asked, "You're Mr. L. T. Thomas?" to which Thomas gave an affirmative response. The State offered evidence consisting of unsigned but certified copies of journal entries and certified pen packs received in the original enhancement hearing to show Thomas' two prior convictions. Additionally, however, the exhibits included certified docket entries from the two prior criminal prosecutions which reflect that Thomas was present with counsel at the time of his plea, conviction, and sentencing in each of the cases. The entries reflecting these facts are followed by the handwritten initials of the trial judge. Thomas interposed foundational and relevance objections to this evidence, arguing that the journal entries were not signed by the trial judge and that the State had failed to prove that he was the same person named in the docket entries from the prior criminal cases. The district court overruled these objections and determined, based upon the evidence presented, that Thomas was a habitual criminal.

At the conclusion of the enhancement hearing, Thomas agreed to proceed immediately to resentencing, specifically waiving a supplemental presentence investigation. Thomas asked the court to consider imposing concurrent sentences, given his good prison record. In response to this request, the court continued the hearing until a supplemental presentence investigation could be prepared which would reflect Thomas' conduct while incarcerated.

When the resentencing hearing reconvened on February 5, 2003, the court stated that after learning from the probation office that Thomas had been incarcerated since his original sentence, it had decided not to request a supplemental presentence investigation, and instead had requested a report of Thomas' record during his incarceration. The report, which was received into evidence, indicated that Thomas' conduct was "very appropriate . . . within the prison walls." The court also received letters written on behalf of Thomas, as well as Thomas' own written

statement. Thomas was allowed to make an oral statement in which he reasserted his claim of self-defense. The court stated that Thomas was entitled to some consideration "for the way [Thomas had] conducted himself while . . . in prison." It then sentenced Thomas to prison terms of 20 years to life for second degree murder, 6 to 8 years for the first count of use of a weapon to commit a felony, 10 to 12 years for assault in the first degree, and 5 to 10 years on the second count of use of a weapon to commit a felony, all terms to be served consecutively.

On the following day, February 6, 2003, the parties again appeared before the court. The court stated that in an attempt to show Thomas leniency, it had unintentionally imposed void sentences because any sentence for less than 10 years was not permitted under the habitual criminal statute. See Neb. Rev. Stat. § 29-2221(1) (Cum. Supp. 1994). Accordingly, the court imposed consecutive prison sentences of 20 years to life for second degree murder, 10 to 12 years on the first related weapons conviction, 10 to 12 years for assault in the first degree, and 10 to 12 years on the second related weapons conviction.

## ASSIGNMENTS OF ERROR

Thomas assigns, reordered and restated, that the district court erred in (1) overruling his motion for recusal, (2) overruling his motion in arrest of judgment, (3) failing to find that the second degree murder statute is unconstitutional, (4) finding that Thomas was a habitual criminal, and (5) imposing improper and excessive sentences.

## STANDARD OF REVIEW

A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004). A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000).

When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent

conclusion irrespective of the decision made by the court below. *Hubbard, supra.*

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *Hubbard, supra; State v. Hurbenca,* 266 Neb. 853, 669 N.W.2d 668 (2003). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Hurbenca, supra.*

## ANALYSIS

### MOTION FOR RECUSAL

The right to an impartial judge is guaranteed under the Due Process Clause of the 14th Amendment to the U.S. Constitution and the due process clause of the Nebraska Constitution, the parameters of which are coextensive. *State v. Ryan,* 257 Neb. 635, 601 N.W.2d 473 (1999); *State v. Lotter,* 255 Neb. 889, 587 N.W.2d 673 (1999) (supplemental opinion). This right extends to both the trial and the sentencing hearing. *Ryan, supra.* In order to show a constitutional violation of the right to an impartial judge, a defendant must prove actual bias or structural error. See *Ryan, supra.* Structural error occurs when the defendant shows that a judge had such a strong personal or financial interest in the outcome of the trial that he or she was unable to hold the proper balance between the state and the accused.

Thomas does not contend that structural error occurred in this case. However, he does contend that the record reflects actual bias on the part of Judge Spethman, citing as examples the judge's "refusal to allow even the offer of the prosecutor's deposition," his failure to require fingerprint evidence to prove Thomas' identity, and his sarcasm in initially requesting a supplemental presentence investigation. Thomas, however, also acknowledges that other portions of the record "tend to show differently." Brief for appellant at 13. A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Bjorklund, supra.* Based upon our review of this record, we find no indication of actual bias on the part of Judge Spethman.

 Thomas correctly argues that there are circumstances in which recusal of a judge is required even where actual bias cannot be shown. In *State v. Barker*, 227 Neb. 842, 847, 420 N.W.2d 695, 699 (1988), this court held that "a judge, who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding, must recuse himself or herself from the proceedings when a litigant requests such recusal." We noted in *State v. Ryan*, 257 Neb. at 652, 601 N.W.2d at 487, that this recusal rule "is premised on evidentiary principles and judicial ethics" and that while the "underlying concerns promote due process and efficiency in the legal process, they are separate and distinct from constitutional rights." We thus concluded that "[t]he *Barker* rule is not a constitutional right in and of itself." *Id.* See, also, *Barker, supra.* In *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), we noted that the *Barker* recusal rule is limited to ex parte communications which pose a threat to the judge's impartiality.

 Here, Thomas argues that Judge Spethman was required to grant his motion for recusal based upon an alleged ex parte communication from a prosecutor during his participation in the Crawford case and that the judge became a "peripheral participant" in Thomas' prosecution by giving Crawford "preferential treatment" in recognition of his testimony against Thomas. Brief for appellant at 12. This argument fails because the record does not reflect that Judge Spethman received an ex parte communication. An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party. *In re Interest of Chad S.*, 263 Neb. 184, 639 N.W.2d 84 (2002); *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999). Any communication between the prosecutor and Judge Spethman in Crawford's case would not constitute an ex parte communication in Thomas' case, which was not pending or impending before Judge Spethman when he delayed Crawford's sentencing or when he sentenced Crawford in 1995. Nor did Judge Spethman preside over Thomas' trial. Thus, any information that the judge received regarding Thomas while presiding over Crawford's case was not ex parte with respect to Thomas, and the *Barker* rule is therefore inapplicable.

We have also held that a judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998). See, also, Neb. Rev. Stat. § 24-739 (Reissue 1995). This rule extends to the sentencing phase of a criminal trial. *Pattno, supra.* Thomas argues that "[a] reasonable person, knowing that Judge Spethman had received extraneous information in the Crawford case from ex-parte [sic] communication with a prosecutor would believe that the validity of the February 5, 2003 pronounced sentence was not discovered by the judge himself." Brief for appellant at 13. As noted, the record does not establish the claim that Judge Spethman received an ex parte communication about Thomas from a prosecutor in the Crawford case. However, it does establish that at the time he sentenced Crawford, Judge Spethman was aware of Crawford's cooperation in the prosecution of Thomas. Thus, the issue is whether a reasonable person with knowledge of this circumstance would question Judge Spethman's impartiality in his subsequent involvement in this case under an objective standard of reasonableness.

Absent extraordinary circumstances, in order to disqualify a judge based upon the appearance of impropriety, the bias and prejudice must stem from a nonjudicial source and not from what the judge learned from his or her prior involvement in the defendant's case or cases that concerned parties or witnesses in the defendant's case. *U.S. v. Morris*, 988 F.2d 1335 (4th Cir. 1993) (trial judge's involvement in coparticipant's trial and sentence reduction for coparticipant's cooperation in defendant's prosecution insufficient ground for disqualification); *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977) (trial judge not disqualified because he presided over separate trial of codefendant or because he accepted guilty plea of codefendant); *State v. Joubert*, 235 Neb. 230, 455 N.W.2d 117 (1990) (judge who presided at trial not precluded from subsequently considering defendant's postconviction motion); *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988) (allegation that judge previously prosecuted defendant in another case while serving as county attorney insufficient to show bias

and prejudice). We conclude that under an objective standard of reasonableness, Judge Spethman's judicial involvement in the Crawford case would not cause a reasonable person to question his impartiality in this case.

For the reasons outlined above, we conclude that the district court did not abuse its discretion in overruling Thomas' motion for recusal.

### MOTION IN ARREST OF JUDGMENT

In his second and third assignments of error, Thomas contends that the district court erred in overruling his motion in arrest of judgment as untimely and in failing to find that the statute defining second degree murder is unconstitutional. Neb. Rev. Stat. § 29-2104 (Reissue 1995) provides:

> A motion in arrest of judgment may be granted by the court for either of the following causes: (1) That the grand jury which found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court; or (2) that the facts stated in the indictment do not constitute an offense.

Thomas' motion in arrest of judgment, filed after remand pursuant to our opinion in *Thomas I*, alleges:

> 1. The facts alleged in the information for Second Degree Murder do not constitute an offense and to the extent the other charges are based upon the Second Degree Murder Charge, these other charges do not constitute offenses.
>
> 2. The Second Degree Murder statute under which defendant was charged is unconstitutional and the constitutional defect was attempted to be cured by adding a malice element to the information and jury instructions which element is not embodied in the statute in violation of Defendant's due process rights.

Thomas argues that Neb. Rev. Stat. § 28-304 (Reissue 1995), which defines the offense of second degree murder, is unconstitutional because nothing in the definition prevents the State from arbitrarily and discriminatorily choosing to charge second degree murder rather than the offense of manslaughter upon sudden quarrel, which is defined in Neb. Rev. Stat. § 28-305(1) (Reissue 1995).

Thomas' arbitrary enforcement claim falls within the void-for-vagueness doctrine. See, *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000) (void-for-vagueness doctrine requires that penal statute define criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in manner that does not encourage arbitrary and discriminatory enforcement); *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996). Although in *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001), this court determined that neither § 28-304 nor § 28-305 is unconstitutionally vague, Thomas argues that vagueness and arbitrary enforcement provide independent grounds for challenging the constitutionality of a criminal statute under *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996).

Regardless of how Thomas labels his challenge, we do not reach the constitutional issue because we conclude that it has been waived. First, even if arbitrary enforcement provides an independent ground for challenging the constitutionality of a statute, both it and a void-for-vagueness claim are facial challenges. See, *Caddy, supra*; *Kelley, supra*. Although Thomas argues that his trial counsel could not have filed a motion to quash or a demurrer because the information charged only first degree murder, Thomas' trial counsel did not object to the lesser-included jury instruction of second degree murder. Absent plain error, an issue not raised to the trial court will not be considered by this court on appeal. *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003). Second, assuming without deciding that a motion in arrest of judgment would be an appropriate method of challenging the constitutionality of a statute defining a lesser-included offense under these circumstances, Thomas' trial counsel did not file such a motion after Thomas' convictions and prior to his direct appeal.

In addition, the issue of unconstitutionality was not raised in Thomas' previous appeal in which we affirmed his convictions but vacated his sentences and remanded with directions for a new enhancement hearing and resentencing. *Thomas I*. Under similar circumstances in *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001), this court held that the district court on remand had no authority to consider assignments of error challenging the validity of convictions that had previously been

affirmed. Rather, its authority was limited by the order remanding the causes for resentencing, under the rule that

> [w]hen a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. The order of the appellate court is conclusive on the parties, and no judgment or order different from, or in addition to, that directed by the appellate court can be entered by the trial court.

262 Neb. at 326, 632 N.W.2d at 284-85.

Thomas argues, however, that the claimed unconstitutionality of a criminal statute raises an issue of subject matter jurisdiction which can be asserted at any stage of a criminal proceeding and can never be waived. Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *State v. Gorman*, 232 Neb. 738, 441 N.W.2d 896 (1989). Pursuant to Neb. Rev. Stat. § 24-302 (Reissue 1995), district courts are vested with general, original, and appellate jurisdiction over civil and criminal matters. In this action, Thomas does not challenge the power of the district court to hear and determine a case of this general class. Rather, Thomas relies on *Nelson v. State*, 167 Neb. 575, 94 N.W.2d 1 (1959), to support his argument that his motion in arrest of judgment raises a jurisdictional issue which can be raised at any time in a criminal proceeding.

*Nelson* did not involve a claim that a statute defining a criminal offense was unconstitutional. Rather, the defendant alleged that the information purporting to charge him with the uttering of a forged instrument was fatally defective because it failed to allege an essential element under prior case law. This issue was raised for the first time on direct appeal. This court stated that under Nebraska's Constitution, a defendant had the right to demand the nature and cause of accusation, and determined that the information was fatally defective because it failed to charge an offense even if true. We stated the rule that an objection to a fatally insufficient information may be raised for the first time on appeal in the absence of a statute to the contrary. We then determined that the waiver of defects statute was not to the contrary because it applied only to defects which could be raised by a

motion to quash, and not to defects that could be raised by a demurrer. Although the defective information in *Nelson* raised constitutional concerns, this court did not analyze it as an issue of subject matter jurisdiction, but, rather, focused on whether the objection was foreclosed by the waiver of defects statute.

Thomas' argument that his facial challenge to the constitutionality of the statute under which he was convicted raises a jurisdictional issue which can never be waived is contrary to our holding in *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). In *Severin*, we held that the proper way to challenge the facial constitutional validity of a charging statute is by a motion to quash or by a demurrer and that a defendant who did neither but allowed a plea of not guilty to be entered on his behalf waived any claim that the statute under which he was charged was unconstitutional on its face. Although Thomas argues that *Severin* is inconsistent with *Nelson*, we conclude that on the issue before us, they are consistent in that neither treats an allegation of a fatally defective information as a jurisdictional issue. Moreover, in *State v. Blackson*, 256 Neb. 104, 107, 588 N.W.2d 827, 830 (1999), we held in a somewhat different context that "[t]he fact that an information is fatally defective does not deny the trial court jurisdiction to issue any order relating to those purported charges."

Thomas refers us to language in two of our cases that he claims supports his jurisdictional argument. In *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980), this court determined that a facial challenge to a criminal statute could be raised by a motion to quash or by a demurrer, and further determined that the waiver of defects statute did not operate to preclude using a motion to quash to make a facial challenge when a demurrer was filed on the same day making the same challenge. In the process of making that determination, we cited a case in which the Wisconsin Supreme Court held that "an information which charges an offense in language of a statute which is unconstitutional states no offense and the defect is jurisdictional." *Id.* at 727, 290 N.W.2d at 185, citing *State v. Evjue*, 253 Wis. 146, 33 N.W.2d 305 (1948). Thomas further points out that in *State v. Torres*, 254 Neb. 91, 574 N.W.2d 153 (1998), we cited *People v. Starnes*, 273 Ill. App. 3d 911, 653 N.E.2d 4, 210 Ill. Dec. 417 (1995), in which the Illinois

Court of Appeals held that while a constitutional challenge to a statute under which a defendant is convicted cannot be waived, a defendant can waive such a challenge to the constitutionality of a collateral statute.

In both *Valencia* and *Torres*, the cited language was dicta. In *Valencia*, we did not hold that the alleged defect raised an issue of subject matter jurisdiction, and in *Torres*, we did not hold that a constitutional challenge to the charging statute could not be waived. We further note that in *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001), we disposed of an argument similar to that made in this case by assuming without deciding that a constitutional challenge to a charging statute was jurisdictional and could be raised at any time, but concluding that § 28-304 was not unconstitutionally vague as alleged in that case. We view the issue of whether a facial challenge to the constitutionality of a charging statute is an issue of subject matter jurisdiction as one on which this court has not definitively held.

This issue was addressed by the District of Columbia Court of Appeals in *U.S. v. Baucum*, 80 F.3d 539 (D.C. Cir. 1996). In that case, the court of appeals had declined to address the defendant's constitutional challenge to the underlying criminal statute on direct appeal because he had failed to preserve it at trial. In his petition for rehearing, the defendant argued for the first time that his constitutional challenge to the charging statute raised an issue of the district court's subject matter jurisdiction and that, therefore, he could not be deemed to have waived it. The court of appeals noted that there was authority to the contrary, but ultimately concluded that "the weight of the precedent, as well as prudential considerations, counsel toward treating facial constitutional challenges to presumptively valid statutes as nonjurisdictional." *Id.* at 540. The court reasoned:

> At the time of [the defendant's] indictment (and still today), the federal law he was charged with violating, having never been declared unconstitutional, enjoyed a presumption of validity. When a federal court exercises its power under a presumptively valid federal statute, it acts within its subject-matter jurisdiction . . . . It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there

is no valid "law of the United States" to enforce), but [the defendant's] belated assertion of a constitutional defect does not work to divest that court of its original jurisdiction to try him for a violation of the law at issue.

*Id.* at 540-41. The court further reasoned that because federal courts are obligated to address jurisdictional issues sua sponte, a rule that a constitutional challenge to a statute implicated subject matter jurisdiction would require federal courts to address a statute's validity as a threshold matter in any case. The court determined that such a requirement was contrary to established U.S. Supreme Court precedent declining to address constitutional questions not put in issue by the parties. See, also, *U.S. v. Feliciano*, 223 F.3d 102 (2d Cir. 2000).

We find this reasoning persuasive and therefore hold that a facial challenge to a presumptively valid criminal statute does not raise an issue of subject matter jurisdiction in a criminal prosecution and thus may be waived if not timely asserted. Nebraska law is consistent with federal law in that criminal statutes are presumed constitutional. *State v. Hynek*, 263 Neb. 310, 640 N.W.2d 1 (2002); *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). Thomas was charged with first degree murder and convicted of the lesser-included offense of second degree murder defined by a statute, § 28-304, which has never been held unconstitutional. The jury was instructed, without objection, on all of the statutory elements of second degree murder plus the element of malice which was then required under our case law. See *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), *overruled, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). At the time we affirmed his conviction in *Thomas I*, Thomas made no claim that § 28-304 was unconstitutional. Accordingly, we conclude that the claim was waived and that the district court did not err in declining to consider it upon our remand for a new enhancement hearing and resentencing.

## HABITUAL CRIMINAL DETERMINATION

Nebraska's habitual criminal statutes provide for enhanced mandatory minimum and maximum sentences for a convicted defendant who "has been twice convicted of [a] crime, sentenced, and committed to prison, in this or any other state . . . for

terms of not less than one year." § 29-2221(1). The statutes further provide:

> At the hearing of any person charged with being a habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

Neb. Rev. Stat. § 29-2222 (Reissue 1995).

In a proceeding to enhance a punishment because of prior convictions, the State has the burden to prove such prior convictions. *Thomas I*. When using a prior conviction to enhance a sentence, the State need show only that at the time of the prior conviction, the defendant had, or waived, counsel. *Id*. The existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities. *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982). In reviewing criminal enhancement proceedings, " '[a] judicial record of this state, or of any federal court of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or the person having the legal custody thereof, authenticated by his seal of office, if he has one.' " *State v. Addison*, 197 Neb. 482, 487, 249 N.W.2d 746, 749 (1977), quoting *State v. Micek*, 193 Neb. 379, 227 N.W.2d 409 (1975).

Thomas mounts a two-pronged attack on the sufficiency of the evidence offered by the State at the enhancement hearing conducted pursuant to our remand and directions in *Thomas I*. First, relying upon *State v. Linn*, 248 Neb. 809, 539 N.W.2d 435 (1995), he argues that the evidence of prior convictions was insufficient because it did not include the signature of the judge(s) who entered the judgments of conviction. Second, he argues that the State failed to prove that he was the defendant in the two prior criminal proceedings which were reflected in the State's evidence.

In *Linn*, which involved a sentence enhancement for driving under the influence of alcohol, the State sought to prove two prior convictions by evidence consisting of copies of the

complaints and certified copies of the county court's checklist showing that the defendant appeared with counsel, was advised of her rights, and entered a plea of guilty. However, the checklist relating to one of the convictions was not signed by the judge. This court held that in order "to prove an earlier conviction for the purpose of sentence enhancement, the evidence must, with some trustworthiness, reflect a court's act of rendering judgment." 248 Neb. at 812, 539 N.W.2d at 438. We concluded that an unsigned checklist failed to prove that a judgment had been rendered on the complaint despite the clerk's certification.

In *State v. Fletcher*, 8 Neb. App. 498, 596 N.W.2d 717 (1999), the Nebraska Court of Appeals considered a *Linn* challenge to the State's proof of prior convictions in a habitual criminal enhancement proceeding. The court did not interpret *Linn* to require as a matter of law that a judge's signature must appear on a judgment of conviction offered for purposes of enhancement. Rather, the court framed the dispositive issue as "whether the State's evidence . . . was sufficient to establish with some trustworthiness a district court's act of rendering at least two prior judgments." *Fletcher*, 8 Neb. App. at 511, 596 N.W.2d at 726. See, also, *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987) (concluding that State substantially complied with required proof of commitment in criminal enhancement proceeding). We agree with this formulation of the standard and apply it to this case.

We note that while a district judge's signature is now required to render a judgment, see Neb. Rev. Stat. § 25-1301(2) (Cum. Supp. 2002), a signature was not required at the time of Thomas' prior convictions. While it is likewise true that a county court judge's signature was not required at the time that *Linn* was decided, an unsigned checklist and a copy of a complaint were the only evidence supporting the prior conviction in *Linn*. That is not the case here.

The State submitted certified copies of journal entries of two prior judgments convicting and committing Thomas to terms of incarceration over 1 year in length. Although unsigned, each journal entry has the judge's name typed on the judgment, and the certification contains the clerk's seal and attestation that the copy is the same as the judgment that appears in the court's

records. The State also submitted certified trial docket entries, initialed by the judge, showing that Thomas was represented by counsel who was present with Thomas when he was convicted and sentenced in both of the prior criminal cases. Compare *State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999) (recognizing that initialed checklist is sufficient to show compliance with all requirements to establish prior, valid plea-based conviction). In addition, the State submitted certified copies of records maintained by the Department of Correctional Services showing Thomas' dates of commitment for each prior conviction and sentence. This evidence was sufficient to establish with the requisite trustworthiness the rendering of two prior judgments of conviction, each carrying prison sentences of 1 year or more.

As to the issue of identity, we have held that an authenticated record establishing a prior conviction of a defendant with the same name is prima facie evidence sufficient to establish identity for the purpose of enhancing punishment and, in the absence of any denial or contradictory evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989). The documents offered by the State in this case meet this requirement. In addition, the documents offered included photographs of the incarcerated person named "L. T. Thomas" and reflected his date of birth as "7-24-65," the same date of birth reflected in the presentence investigation report prepared prior to Thomas' original sentencing in this case. At the commencement of the enhancement hearing, Thomas acknowledged that he was "L. T. Thomas." His counsel did not deny that Thomas was the person referred to in the prior conviction records but argued that the State had not met its burden to prove that he was. We conclude that the State's evidence was sufficient to meet its prima facie burden of proof that Thomas had been convicted of two prior offenses carrying prison sentences of 1 year or more and that because that evidence was not controverted, it was sufficient to support the finding of the court that Thomas was a habitual criminal.

## SENTENCING ISSUES

In arguing that his sentences were excessive, Thomas first contends that the district court erred in resentencing him without

waiting for preparation of an updated presentence investigation report, or obtaining a "further waiver" with regard thereto. Brief for appellant at 17. As noted, Thomas initially waived a supplemental presentence investigation, but the district court nevertheless ordered one when Thomas requested leniency based upon his good prison record. When the hearing resumed, the court stated that it had decided that a report of Thomas' prison record subsequent to his original sentencing would suffice in lieu of a supplemental presentence investigation. The court received the report in evidence, as well as letters in support of Thomas from his family members. The report reflected several incidents of misconduct during Thomas' incarceration, but also included a letter in support of Thomas from a prison official. Thomas was allowed to submit an additional written statement and to make an oral statement to the court before sentencing. He did not object to the court's proceeding without a supplemental presentence investigation.

Neb. Rev. Stat. § 29-2261(1) (Reissue 1995) provides that "[u]nless it is impractical to do so, when an offender has been convicted of a felony, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation." This court has interpreted this section as mandating that the sentencing court obtain and consider a presentence investigation with every felony conviction. *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986). However, the mandate is imposed for the benefit of the defendant, and the statutory right to a presentence investigation may be waived. *Id.*

In *Tolbert*, the defendant left an alcohol treatment program without permission while serving a 90-day sentence for misdemeanor convictions. She was charged with one count of escape. At the plea hearing, her counsel asked the court to use the presentence investigation report that had been prepared 2 months earlier for her misdemeanor convictions. The court agreed. At sentencing, the defendant waived her right to have the presentence investigation completed for the escape conviction and the court pronounced her sentence. The court's failure to obtain the report was assigned as error.

This court stated that the defendant waived her right to a presentence investigation. We further determined that the savings

clause of § 29-2261, providing "[u]nless it is impractical to do so," included those circumstances where a presentence investigation would be needlessly repetitive of one completed a short time earlier.

 The presentence investigation report that was prepared for Thomas' original sentencing in 1995 is included in our record and contains all of the information required under § 29-2261(3). In addition, a sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed. *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). We conclude that the district court did not abuse its discretion in obtaining and relying on the evidence received in lieu of a supplemental presentence investigation, in view of the fact that Thomas consented and did not object to proceeding in that manner. See *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003) (defendant in criminal case may not take advantage of alleged error which defendant invited trial court to commit).

Thomas also contends that the sentences imposed by the district court pursuant to our remand and directions in *Thomas I* were excessive. The record reflects that in consideration of Thomas' conduct while incarcerated, the court initially imposed shorter sentences than Thomas had originally received on all of his convictions except that for second degree murder. After realizing that two of these sentences fell below the mandatory minimum required under the habitual criminal statute, the court correctly resentenced Thomas on those counts to the mandatory minimum term. As a result, Thomas received prison sentences of 10 to 12 years on each of the two counts of use of a weapon to commit a felony, compared to his original prison sentences of 12 to 14 years on the use of a weapon count related to the second degree murder conviction and 10 to 12 years on the use of a weapon count related to the first degree assault conviction. He also received a prison sentence of 10 to 12 years on his conviction of first degree assault, compared to his original prison sentence of 12 to 14 years, and a prison sentence of 20 years to life on his conviction for second degree murder, the same as his original sentence. Thomas requested that the court impose concurrent sentences for his

convictions of second degree murder and first degree assault, but the court declined to do so.

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003). Although it is generally within the trial court's discretion to direct that sentences imposed for separate crimes be served concurrently or consecutively, Neb. Rev. Stat. § 28-1205 (Reissue 1989) does not permit such discretion in sentencing because it mandates that a sentence for the use of a deadly weapon in the commission of a felony be served consecutively to any other sentence imposed. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). Thus, the district court had no discretion to order anything other than consecutive prison sentences of at least 10 years for Thomas' two convictions for use of a weapon to commit a felony. The sentence imposed for assault in the first degree was the minimum allowed under the habitual criminal statute, and the sentence for second degree murder was the same that had been ordered in his first sentencing. The trial court stated that while it believed Thomas was entitled to some consideration of his conduct while in prison, it did not intend to minimize the seriousness of the homicide conviction. Thomas' overall sentences were reduced by 4 years from the sentences imposed by the original sentencing court. We conclude that the court did not abuse its discretion in imposing these sentences.

## CONCLUSION

Finding no error, we affirm the judgment of the district court determining that Thomas was a habitual criminal and resentencing him accordingly.

AFFIRMED.