STATE OF NEBRASKA, APPELLEE, V.
PEIRCE D. HUBBARD, APPELLANT.
673 N.W.2d 567

Filed January 23, 2004.    No. S-03-215.

Matthew K. Kosmicki for appellant.

Jon Bruning, Attorney General, Mark D. Raffety, and Jeffrey J. Lux for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Peirce D. Hubbard appeals his conviction and sentence on charges of theft by receiving stolen property and being a habitual criminal. On appeal, he contends that the State must charge in the information and prove that there was no intent to restore the property to the owner. He also contends that there was insufficient

evidence, that he was denied effective assistance of counsel, that the judge should have recused herself, and that the sentence was excessive. We affirm.

## BACKGROUND

Hubbard was charged with one count of burglary and being a habitual criminal and another count of theft by receiving stolen property valued at between $500 and $1,500. For the charge of theft by receiving stolen property, the information charged that Hubbard, "with the intent to deprive the owner thereof, did receive, retain, or dispose of stolen movable property."

The record shows that on December 26, 2000, Jane Burke, a Lincoln, Nebraska, attorney, left her home and closed the garage door. When she returned, she found the garage door open and discovered that Christmas presents and other items, including a pair of binoculars and a digital camera, were missing; the camera was valued at about $872 to $900. Burke called the police and also her husband, Andrew Strotman, who is also a Lincoln attorney.

The record shows that on the morning of December 26, 2000, Strotman went to work at the U.S. Bank building in downtown Lincoln and parked in the parking garage; he did not lock the car. When Strotman left work to return home, he found his garage door opener was missing. A receipt from an oil change bearing his address was found on the floor of the car.

Burke and Strotman provided the police with information about the missing items, including information about a Lladro figurine worth about $372 and other items worth at least $720. A detective contacted the store where the figurine was purchased and learned that it had been returned by a person named "Aariqa Allen." Allen later learned that the police were looking for her, and she voluntarily turned herself in. Allen told the police that the Lladro figurine was included in Christmas presents opened at Hubbard's mother's home with Hubbard and a woman named "Dawn Shade." Allen suggested returning the figurine for cash, and she, Hubbard, and Shade went together to return it; Shade and Allen made the exchange, while Hubbard waited in the car.

Shade was later located by the police and interviewed. During the first interview, Shade told police that she was responsible for

the burglary and that Hubbard was not involved. The police later searched Shade's home and found the pair of binoculars that had been stolen; other items stolen, including the digital camera, were never recovered.

Shade gave a second interview to police and changed her story to implicate Hubbard. At trial, Shade explained that she initially lied to the police because she did not have a prior record and would get in less trouble than Hubbard. She stated that Hubbard coached her extensively about what to say during the first interview. She said she decided to tell the truth because it was the right thing to do and she did not want to take the blame. She admitted that she had reached a plea agreement in exchange for testimony and that she had been involved sexually with Hubbard but had also been sexually involved with Allen which caused some tension between Shade and Hubbard.

Shade testified that on December 26, 2000, she and Hubbard went to the U.S. Bank building and walked through the parking garage. According to Shade, Hubbard opened a car door and removed a garage door opener and a receipt. After they left the parking garage, Hubbard drove to the Burke-Strotman residence, opened the garage door, and pulled into the garage. Hubbard got out of the car and entered the house, while Shade stayed in the car. Shade testified that Hubbard made several trips from the house to the car to remove items. They then left and went to Hubbard's mother's home. Shade testified that they opened some of the presents and that Hubbard then left to pick up Allen. When Hubbard and Allen returned, more presents were opened, although no one clearly remembered Hubbard's opening presents at that time. After the items were unwrapped, Hubbard, Shade, and Allen placed them in Allen's car.

No one specifically testified about Hubbard's receiving specific stolen items or cash from the return of the figurine. There was testimony, however, that after the figurine was returned, Hubbard, Shade, Allen, and another individual stayed in a hotel room that was paid for with money from the return of the figurine. Shade also testified that she thought Hubbard gave a stolen item of clothing to a person. Shade further testified that Hubbard told her he had "got rid of" the remaining stolen items; the digital camera was never found or accounted for. Shade

stated that she did not believe that Hubbard intended to return the property to Burke or Strotman.

At the end of the State's case, Hubbard moved to dismiss because of insufficient evidence and the failure of the State to charge or prove that he did not intend to return the property to the owners; the motion was denied, and the defense rested.

Before trial, Hubbard's counsel disclosed that he had previously represented a person named "Dwayne Hill." Hubbard had testified against Hill about 12 years earlier when Hubbard was 15 years old. Hubbard's counsel also disclosed that he knew Burke and Strotman because they were also members of the bar. He later also stated that "at one time or another," he had worked with them, but that he did not know them socially. There was evidence that the public defender's office originally represented Hubbard but withdrew because it represented a codefendant. Another attorney was then appointed, but withdrew because he knew Burke and Strotman and had some pending litigation directly involving them. Hubbard's counsel felt that neither circumstance affected his ability to fairly represent Hubbard. Hubbard moved to discharge his counsel. He told the court that his counsel had "ridiculed" him when he was previously on the stand in the Hill case and that counsel was not answering his current letters and questions. The court denied the motion to dismiss Hubbard's counsel.

Hubbard also asked the judge to recuse herself; the motion was denied.

During trial, Shade mentioned, without objection, that Hubbard told her it was "three strikes for him." Shade also testified that in reference to how she knew a particular individual, "[s]he was — I met her. I didn't have conversation with her, but [Hubbard] showed me who she was out at the penitentiary." Also during trial, Hubbard complained that his attorney was not asking the questions that he had requested to be asked. For example, the attorney did not question a police investigator about inconsistencies in his testimony and the dates that he interviewed witnesses.

The court instructed the jury on the elements of theft by receiving stolen property, using the term "intent to deprive." The jury acquitted Hubbard on the burglary charge but found him

guilty of theft by receiving stolen property. The court found Hubbard to be a habitual criminal and sentenced him to 10 to 20 years' imprisonment, with credit for 554 days served.

## ASSIGNMENTS OF ERROR

Hubbard assigns that the district court erred by (1) failing to sustain his motion to dismiss because the State failed to charge and prove an element of the crime, (2) failing to dismiss when there was insufficient evidence, (3) failing to recuse itself, and (4) imposing an excessive sentence. Hubbard also assigns that he was denied effective assistance of counsel.

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. March*, 265 Neb. 447, 658 N.W.2d 20 (2003).

■ A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed. *Kramer v. Miskell*, 249 Neb. 662, 544 N.W.2d 863 (1996).

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003).

## ANALYSIS

### Intent to Restore Property as Element of Theft by Receiving Stolen Property and Sufficiency of Evidence

Hubbard contends that under the theft statute, Neb. Rev. Stat. § 28-517 (Reissue 1995), a lack of intent to restore property to the owner is an essential element that must be charged in the information and proved by the prosecution. He argues that the element was not charged and that there was insufficient evidence to convict him. The State contends that the intent to restore the property is a defense.

Section 28-517 provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with the intention to restore it to the owner." This court has never

addressed whether a lack of intent to restore the property to the owner is an element of theft by receiving stolen property.

Section 28-517 is the same as A.L.I., Model Penal Code and Commentaries § 223.6 (1980), with the exception that additional definitions in the Model Penal Code were not adopted. The Model Penal Code comments to § 223.6 make clear that a lack of intent to restore property to the owner is intended to be an element of the crime of theft by receiving stolen property. In particular, comment 4(a) at 237 states:

> Theft convictions generally require a purpose to deprive another of his property. In terms, Section 223.6 does not require such a purpose for criminal receiving, but the net effect of its provisions is the same. First, the actor either must know that the property has been stolen or must believe that it probably has been stolen. Second, the actor's receipt, retention, or disposition of the property is criminal, unless his conduct is undertaken "with purpose to restore it [the property] to the owner." Since a purpose to restore defeats conviction, and since the prosecution must establish beyond a reasonable doubt that the actor did not have such a purpose, the culpability required under Section 223.6 can properly be assimilated to a purpose to deprive the victim of his property. As a practical matter, the absence of a purpose to restore will be proved by showing that it was part of the receiver's plan to avoid detection and to realize for himself the benefits of the property.

We determine that the adoption of a theft statute that is based on the Model Penal Code, along with the traditional elements of common-law theft, establishes that a lack of intent to restore the property is an element of the crime. Thus, it must be charged in the information and proved by the prosecution.

Hubbard next argues that the lack of intent to restore the property was not charged or proved. The information alleged in part that Hubbard, "with the intent to deprive the owner thereof, did receive, retain, or dispose of stolen movable property." Although the information did not charge the crime using the terms of the statute, it did include the allegation that Hubbard intended to deprive the owners of their property.

■ We have stated that where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993). But we have not required that a crime be charged using the exact statutory language. Instead, an information or complaint is sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. *Id.*; *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991).

Here, an equivalent term was used: The use of the term "deprive" encompassed a lack of intent to restore the property to the owners.

■ The lack of intent to restore the property was also proved at trial through evidence that Hubbard planned to avoid detection and realize benefits of the property. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003).

Here, there was testimony that Hubbard did not intend to restore the stolen property, that he "got rid of" some of the property, and that he benefited from the property, such as staying in a hotel room paid for with proceeds from the return of the figurine. There was also evidence that Hubbard received property by assisting with the unwrapping of gifts. Finally, because the digital camera was never located, there was circumstantial evidence that Hubbard disposed of it. The record supports a finding that the property was worth over $500. Under these circumstances, the absence of a purpose to restore the property was not only sufficiently charged, but there was sufficient evidence for the jury to find Hubbard guilty beyond a reasonable doubt of theft by receiving stolen property.

## MOTION TO RECUSE

Hubbard next contends that the district court erred when the judge did not recuse herself from the case. He argues that the

judge had a conflict of interest because she knew the victims in the case and had attended professional functions where they were present.

A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. *Jim's, Inc. v. Willman,* 247 Neb. 430, 527 N.W.2d 626 (1995), *disapproved on other grounds, Gibilisco v. Gibilisco,* 263 Neb. 27, 637 N.W.2d 898 (2002). A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Gibilisco, supra.*

Here, the judge knew the victims in their professional capacities. However, nothing in the record indicates that the victims were close personal friends of the judge or that the judge had a personal interest in their case. That the victims are attorneys, known by the judge in her professional capacity, is not enough to require recusal. That a judge knows most of the attorneys practicing in his or her district is common, and the fact that a judge knows attorneys through professional practices and organizations does not, by itself, create the appearance of impropriety. See *State v. Whitlow,* 988 S.W.2d 121 (Mo. App. 1999). We determine that the judge did not err by refusing to recuse herself.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Hubbard argues that he was denied effective assistance when trial counsel failed to (1) withdraw because a conflict of interest existed, (2) challenge probable cause for arrest through a motion to quash or a plea in abatement, (3) object to comments that it was "three strikes" for Hubbard and that Hubbard showed Shade a person at the penitentiary, and (4) cross-examine a police investigator about the dates he interviewed witnesses.

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised

or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999).

To establish a right to relief because of a claim of ineffective counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003).

To prove prejudice, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Ray*, 266 Neb. 659, 668 N.W.2d 52 (2003). If it is more appropriate to dispose of an ineffectiveness claim because of the lack of sufficient prejudice, that course should be followed. *State v. George*, 264 Neb. 26, 645 N.W.2d 777 (2002).

We are able to address three of Hubbard's contentions on direct appeal. First, we determine that Hubbard was not denied effective assistance of counsel when his counsel failed to withdraw.

The right to effective assistance of counsel entitles the accused to the undivided loyalty of an attorney, free from any conflict of interest. *State v. Narcisse*, 260 Neb. 55, 615 N.W.2d 110 (2000). The right to effective assistance of counsel may be impaired when one attorney represents multiple defendants. *Id.* But the fact of multiple representation alone is not a per se violation of the Sixth Amendment. *Id.*

Here, Hubbard's counsel properly informed the court that he had previously represented a person that Hubbard had testified against about 12 years earlier when Hubbard was 15 years old. Counsel also informed the court that he knew the victims professionally. The court refused to allow counsel to withdraw. Hubbard does not raise the failure of the court to allow counsel to withdraw as a separate assignment of error. We determine that

Hubbard was not denied effective assistance of counsel when his counsel properly brought the issue before the court.

Second, Hubbard was not denied effective assistance of counsel when his counsel failed to bring a motion to quash or file a plea in abatement to challenge the State's probable cause to arrest him. The record shows that Hubbard had a preliminary hearing, but it is unclear whether the issue of probable cause was raised. Regardless, we have stated that any defect in the waiver of a preliminary hearing to determine probable cause is cured by a jury's later verdict finding the defendant guilty beyond a reasonable doubt. See *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). We apply that same principle here. Even if Hubbard's counsel failed to properly raise probable cause, an issue we do not decide, Hubbard was not prejudiced because he was found guilty. Thus, he was not denied effective assistance of counsel.

Third, we determine that Hubbard was not prejudiced by statements that he told Shade it was "three strikes for him" and that he identified a person that was in prison. Assuming without deciding that it was error for Hubbard's counsel to fail to object to this testimony, we conclude that there was no prejudice. The testimony was brief, was not the focus of the questions asked, and did not specifically state that Hubbard had committed previous felonies. Because of the brief nature of the statements, we are unable to find a reasonable probability that but for any error in not objecting to the testimony, the result of the proceeding would have been different. Accordingly, Hubbard was not denied effective assistance of counsel.

Finally, we are unable to determine on direct appeal whether the failure to cross-examine a police investigator about the dates of certain interviews denied Hubbard effective assistance of counsel. The record is insufficient to show why the questions were not asked or what the testimony would be if they were asked. Thus, from the record, we cannot say whether an evidentiary hearing on these issues is necessary, and thus, we do not address this argument on direct appeal. See *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

### SENTENCING

Hubbard contends that his sentence was excessive. He argues that the judge sentenced him without considering various factors.

We have said that in imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002). But sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003).

Hubbard was sentenced to the mandatory minimum term under the habitual criminal statutes. See Neb. Rev. Stat. § 29-2221 (Reissue 1995). We find this assignment of error to be without merit.

## CONCLUSION

We determine that the lack of intent to restore stolen property to the owner is an element of the crime of theft by receiving stolen property. We also determine that the elements were sufficiently charged in the information and proved. We further determine that the trial judge did not err when she refused to recuse herself and that Hubbard did not receive an excessive sentence. Hubbard was not denied effective assistance of counsel on three of his four arguments. We do not review on direct appeal his argument that he was denied effective assistance of counsel because certain questions were not asked of an investigator on cross-examination.

AFFIRMED.

STEPHAN, J., not participating.