771 N.W.2d 173 (2009)
17 Neb. App. 725
STATE of Nebraska, appellee,
v.
Turner R. McDANIEL, appellant.
No. A-08-779.
Court of Appeals of Nebraska.
June 30, 2009.
*176 Jeffery A. Pickens, of Commission on Public Advocacy, Lincoln, for appellant.
Jon Bruning, Attorney General, Erin E. Leuenberger, and James D. Smith, Lincoln, for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
SIEVERS, Judge.
Turner R. McDaniel appeals the decision of the district court for Lancaster County which, after a jury trial, convicted him of first degree assault, a Class III felony. McDaniel was sentenced to 8 to 14 years' imprisonment. We affirm.

FACTUAL AND PROCUDURAL BACKGROUND
We begin with a brief summary of the factual and procedural background at the outset, which will be supplemented as necessary in our analysis.
After the downtown Lincoln bars closed in the early morning hours of May 27, 2006, McDaniel got into a scuffle with Aaron Obermier. McDaniel started to walk away, but when Obermier continued making comments toward McDaniel, McDaniel walked back to Obermier and punched him in the head, although he testified that he did so because he thought Obermier was about to hit him. Obermier fell back, striking his head on the cement. Obermier suffered substantial head and brain injuries and required a decompressive craniectomy to relieve swelling in his brain. Obermier spent 10 days in the hospital, 3 weeks at a rehabilitation hospital, and then nearly a year in an assisted living facility.
*177 McDaniel was charged with assault in the first degree, a Class III felony. Prior to trial, McDaniel filed numerous motions in limine. One such motion in limine sought to prohibit any and all photographs depicting Obermier or his injuries taken after the assault of May 27, 2006. Another motion in limine sought to prohibit any evidence that Obermier suffered "serious bodily injury," in exchange for McDaniel's stipulation that Obermier had sustained "serious bodily injury," an element of the charged offense. Both motions in limine were overruled.
After a jury trial, McDaniel was convicted of assault in the first degree, a Class III felony. McDaniel was sentenced to 8 to 14 years' imprisonment. He now appeals with new counsel.

ASSIGNMENTS OF ERROR
McDaniel alleges that the district court erred in (1) giving an erroneous "submission" instruction to the jury, in violation of McDaniel's right to have his case decided by an impartial and uncoerced jury; (2) giving the jury an erroneous instruction after the jury announced it was at a stalemate and unable to reach a verdict, thus violating McDaniel's right to have his case decided by an impartial and uncoerced jury; and (3) refusing to direct the prosecution to accept McDaniel's offer to stipulate that Obermier suffered a serious bodily injury and, in violation of Neb.Rev.Stat. § 27-403 (Reissue 2008), allowing the prosecution to present evidence of Obermier's injury. McDaniel also alleges that he was denied his right to effective assistance of counsel because of his trial counsel's failure to object to (1) the erroneous jury instructions referenced above and (2) the evidence concerning Obermier's injury.

STANDARD OF REVIEW
Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. State v. Schmidt, 276 Neb. 723, 757 N.W.2d 291 (2008). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. Id.
In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. State v. Welch, 275 Neb. 517, 747 N.W.2d 613 (2008).
Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. State v. Hubbard, 267 Neb. 316, 673 N.W.2d 567 (2004). When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. Id.

ANALYSIS

Evidence of Obermier's Injuries.
McDaniel argues that the district court erred in refusing to direct the prosecution to accept McDaniel's offer to stipulate that Obermier suffered a serious bodily injury and in turn by then allowing the prosecution to present evidence of Obermier's injury, in violation of § 27-403. Section 27-403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or *178 misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person. Neb.Rev.Stat. § 28-308(1) (Reissue 2008). There was no dispute that McDaniel intended to, and did, hit Obermier. And McDaniel was willing to stipulate that Obermier suffered a serious bodily injury. McDaniel simply argued that he should not be held accountable, because he acted in self-defense.
Prior to trial, McDaniel filed motions in limine to prohibit evidence of Obermier's injuries, stating in one that he was willing to stipulate that Obermier suffered "serious bodily injury" as contemplated by § 28-308(1). However, the district court overruled McDaniel's motions. During opening arguments, the State discussed Obermier's injuries and McDaniel did not object. During the testimony of a police officer, a picture of Obermier lying on a stretcher and wearing a neck collar was offered and received into evidence with McDaniel's counsel affirmatively stating, "No objection." A prosecution witness testified, without objection, that when Obermier fell and hit his head on the cement, "[h]e looked like he was kind of going into a seizure, his eyes were rolled back."
Midway through trial, McDaniel again offered to stipulate as to medical testimony that Obermier was "seriously injured" within the meaning of the charging statute, but the State was not willing to stipulate to such fact and thereby dispense with its evidence of such. McDaniel then renewed his motion in limine, which was overruled. Next, Obermier testified that he remembers nothing between being with a friend on the night of the incident and waking up in the hospital with the left side of his head "missing." He testified that a piece taken from his skull was sewn into his abdomen and that he had to wear a helmet for protection for 8 to 12 months. Obermier testified that he was at a rehabilitation hospital for 3 weeks and then spent approximately 1 year in an assisted living facility. Obermier testified that since the accident, he has had memory problems, seizures, and no sense of taste or smell and that his hearing on the left side has been affected. McDaniel did not object to this testimony from Obermier. A picture of Obermier with a misshapen head was offered and received into evidence with McDaniel's counsel stating, "No objection."
Dr. Reginald Burton, the trauma director and director of surgical critical care at the hospital where Obermier was treated, testified that when he arrived at the hospital, Obermier was listed as "Category 1," meaning that he had a life-threatening injury. Dr. Burton testified that Obermier's initial CT scans showed bleeding on both the outside and the inside of the brain. A second CT scan showed increased swelling and shift, so Obermier underwent a craniectomy. Dr. Burton testified that part of Obermier's skull was removed to allow the brain to swell and that that piece of skull was put in Obermier's abdomen to keep it sterile and alive so that it could be put back into place later. Dr. Burton testified that Obermier had a tracheotomy and a feeding tube and that he was at the hospital for approximately 10 days. After this testimony by Dr. Burton, McDaniel renewed his objection to the use of evidence and again offered to stipulate that Obermier suffered "serious bodily injury." The court overruled McDaniel's objection, and the State was not willing to stipulate. McDaniel was allowed a continuing objection, but it was overruled. Next, Obermier's CT scan images were offered and received into evidence with *179 McDaniel's counsel affirmatively stating, "I have no objection to those exhibits." And Dr. Burton testified, without objection, as to what the CT scans showed.
Based on the foregoing account of how the evidence of the injury was adduced, it is clear that McDaniel did not properly preserve the issue of allegedly wrongful admission of the evidence of Obermier's injuries for appeal. McDaniel did make two motions in limine, which were later renewed, to prevent evidence of Obermier's injuries, and those motions were overruled. (We note that each time McDaniel made a motion in limine and offered to stipulate that Obermier had sustained serious bodily injury, he cited to Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), which we will discuss shortly.) But when specific testimony regarding Obermier's injuries was offered, McDaniel did not object. Furthermore, when pictures of Obermier or his CT scans were offered into evidence, McDaniel specifically stated that he had no objection to such exhibits. McDaniel's continuing objection was not made until nearly the end of the State's case, when the nature and seriousness of the injury were already in evidence. Thus, McDaniel did not timely object to the evidence relating to Obermier's injuries. And "[t]he failure to make a timely objection waives the right to assert prejudicial error on appeal." State v. Schreiner, 276 Neb. 393, 418, 754 N.W.2d 742, 762 (2008).
Even if McDaniel had preserved the issue for appeal by proper and timely objections, we would still find that this assignment of error is without merit. "[R]efusal of a trial court to accept an offer by the defendant to stipulate to an essential element of the alleged offense ordinarily constitutes no ground for a new trial." State v. Perrigo, 244 Neb. 990, 1002, 510 N.W.2d 304, 312 (1994).
McDaniel cites us to Perrigo, supra, and Old Chief, supra, for the proposition that a court should require the State to stipulate when the probative value of the evidence is outweighed by the danger of unfair prejudice. See, also, § 27-403. However, McDaniel reads Perrigo and Old Chief too broadly, plus they are distinguishable in that both cases involved possession of a firearm by a convicted felon. The stipulation offered in those cases simply went to the defendant's legal status as a convicted felon. The U.S. Supreme Court found that the general rule, that the State may choose its evidence, does not apply to stipulations regarding prior felony convictions, stating:
The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions. Finally, the most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach.
... What we have said shows why this will be the general rule when proof of convict status is at issue, just as the *180 prosecutor's choice will generally survive a [Fed.R.Evid.] 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried.
Old Chief v. United States, 519 U.S. 172, 190-92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Thus, the "forced acceptance" of a stipulation of convicted felon status is a narrow exception to the general rule that the State is allowed to choose how it proves the elements of the charges it has lodged against the defendant.
"The State is allowed to present a coherent picture of the facts of the crimes charged." State v. McPherson, 266 Neb. 734, 743, 668 N.W.2d 504, 513 (2003). And this notion of course extends to McDaniel's self-defense claim, which has the following elements: (1) The belief that force is necessary must be reasonable and in good faith, (2) the force must be immediately necessary, and (3) the force used must be justified under the circumstances. See State v. Graham, 234 Neb. 275, 450 N.W.2d 673 (1990). Depriving the jurors of knowledge of the nature of the injury leaves them to speculate about these aspects of self-defense upon which they were instructed. On the other hand, knowing what happened and the result thereof makes for a "coherent picture" of the State's case as well as being significant with respect to the claim of self-defense.
The dissent in Old Chief, supra, sets out an additional rationale behind this general rule that the State need not accept stipulations:
The Constitution requires a criminal conviction to rest upon a jury determination that the defendant is guilty of every element of the crime of which he is charged beyond a reasonable doubt.... [A] defendant's tactical decision not to contest an essential element of the crime does not remove the prosecution's burden to prove that element....
... The usual instruction regarding stipulations in a criminal case reflects as much: "When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts."
519 U.S. at 199-200, 117 S.Ct. 644 (O'Connor, J., dissenting; Rehnquist, C.J., and Scalia and Thomas, JJ., join).
Whether Obermier suffered a serious bodily injury is a material element which the State had to prove beyond a reasonable doubt. And Obermier's injury was part of the natural sequence of events relating to the assaultas opposed to felon status, where the specifics of the previous felony are unrelated to the current charge. Thus, the State was entitled to choose its evidence and "present a coherent picture of the facts of the crimes charged." See McPherson, 266 Neb. at 743, 668 N.W.2d at 513. The State was not required to stipulate to Obermier's injuries, and thus, the district court did not err by not requiring the State to enter into the stipulation and forgo introduction of evidence of the nature and extent of the injury. This assignment is without merit.

Jury Instruction No. 15"Submission" Instruction.
McDaniel alleges that the district court erred in giving an erroneous "submission" instruction to the jury, in violation of McDaniel's right to have his case decided by an impartial and uncoerced jury. At the core of this argument is instruction No. 15, which stated:
This case is now ready to be submitted to you for your consideration. As I *181 said to you at the beginning of the trial, it is your duty to determine what the facts are. You must approach this task with open mindsconsulting with one another, freely and honestly exchanging your views concerning this case, and respectfully considering the views of the other jurors. Do not hesitate to re-examine your own views and to change your minds, if reason and logic so dictate.
When you get to the jury room, the first thing you must do is select one of you to be foreman or forewoman, the person who will preside over your deliberations. It is the foreman or forewoman's job to see that a verdict is fairly reached and that each juror has a chance to speak fully and freely on the issues in this case.
Your verdict must be unanimous and will be signed by your foreman or forewoman only.
. . . .
When each of you has agreed upon a verdict, your foreman or forewoman will fill in the verdict form, sign and date it.
At the instruction conference, prior to instruction of the jury, McDaniel did not object to instruction No. 15. And the failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. Humphrey v. Nebraska Public Power Dist., 243 Neb. 872, 503 N.W.2d 211 (1993). Therefore, we simply review the instruction for plain error. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. State v. Barfield, 272 Neb. 502, 723 N.W.2d 303 (2006), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
Instruction No. 15 differs from the pattern instruction NJI2d Crim. 9.0, "Submission to the Jury," because instruction No. 15 did not include the following sentence thereof: "But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors or for the mere purpose of returning a verdict." However, the Supreme Court has said, "Although we have stated that the Nebraska pattern jury instructions are to be used whenever applicable, we have recognized that a failure to follow the pattern jury instructions does not automatically require reversal." State v. Fischer, 272 Neb. 963, 974, 726 N.W.2d 176, 184 (2007). Instruction No. 15 does not expressly encourage jurors to change their minds, as McDaniel argues; rather, the instruction clearly states that each juror should be allowed to speak freely and fully and that jurors may change their minds "if reason and logic so dictate." Given this language, we conclude that while pattern instruction NJI2d Crim. 9.0 should ordinarily be used, the instruction given in this case embodies the concepts found therein. Instruction No. 15 did not misstate the law; nor is it misleading. See State v. Schmidt, 276 Neb. 723, 757 N.W.2d 291 (2008). As a result, we find that the instruction as given did not constitute plain error.

Supplemental Jury Instruction Upon Jury Stalemate.
McDaniel argues that the district court erred in giving the jury an erroneous instruction after the jury foreperson informed the court that the jury was at a "stalemate" and unable to reach a verdict. McDaniel argues that the trial court's response to the jury, given orally, violated *182 McDaniel's right to have his case decided by an impartial and uncoerced jury.
After being informed that the jury was at a stalemate, counsel for the defense and the State discussed a supplemental instruction with the court. The jury was brought back into the courtroom and orally instructed as follows:
THE COURT: Okay. I know that I'm sure that all of you have worked very hard to try to reach a verdict in this case but apparently you have not been able or not been successful.
If you are not able to reach a verdict in the case, it is possible that the case would be tried again. There are two things that [the jurors] can do and they can agree on a verdict or disagree on what the facts of the case may actually be. Hopefully, there is nothing to disagree about on the law. The law is as I have stated it to you and instructed you. If you have any disagreements or questions about the law, I may be able to clarify those, if you should submit a written question to me other than the one you submitted before. Any issues on the law should be my problem, not yours. If you disagree over what the evidence showed, then only you can resolve that conflict, if it is to be resolved.
I am going to ask and, frankly, we are not going to hold you hostage orforever. But I am going to ask you to return to the jury room and go over the evidence some more to see if you can reach a verdict. If you find after this short explanation by me that you are unable to reach a verdict, then if you would again let [the bailiff] know.
So I am going to ask you to do that and you are excused and you may return to the jury room.
Again, McDaniel did not object to the supplemental instruction either outside or in the presence of the jury. And "[t]he failure to make a timely objection waives the right to assert prejudicial error on appeal." State v. Schreiner, 276 Neb. 393, 418, 754 N.W.2d 742, 762 (2008). Therefore, as with the other instruction discussed above, we simply review the instruction for plain error.
First, we note that all jury instructions are to be in writing, unless the written instruction is waived by counsel in open court. Neb.Rev.Stat. § 25-1111 (Reissue 2008). And failure to reduce the instruction to writing "shall be error in the trial of the case, and sufficient cause for the reversal of the judgment rendered therein." Neb.Rev.Stat. § 25-1115 (Reissue 2008). However, in order to obtain relief concerning oral instructions, the appellant must demonstrate that it was prejudiced by the trial court's actions. Shipler v. General Motors Corp., 271 Neb. 194, 710 N.W.2d 807 (2006). McDaniel argues that he was prejudiced only because the district court's instruction and explanation were incorrect and tended to coerce dissenting jurors into agreeing with the majority for the sake of reaching a verdict. He does not point to prejudice by virtue of the fact that the instruction was given orally.
In support of his claim of prejudice, McDaniel argues that this instruction given by the district court was improper because it was similar to an "Allen charge." The Allen charge is a well-known and discussed supplemental instruction which tells a deadlocked jury, in effect,
"that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could *183 conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."
State v. Garza, 185 Neb. 445, 447, 176 N.W.2d 664, 665-66 (1970) (quoting Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). The purpose of an Allen charge is to direct an agreement among jurors, be it acquittal or conviction, and is thus coercive, and its use has been long rejected in Nebraska. See Potard v. State, 140 Neb. 116, 299 N.W. 362 (1941). In Garza, supra, the Supreme Court said that the determining factor concerning supplemental charges to deadlocked juries was whether the instruction tended to coerce a dissenting juror or jurors.
Unlike in other cases, such as Garza, supra, the district court here did not know how the jury was split; nor did it direct its instructions to the minority. Instead, the district court directed the jurors to simply continue deliberations to see if they could reach a verdict. In no way did the district court instruct them that they had to reach a verdict. Additionally, while the court told the jurors that if they could not reach a verdict, then it was possible the case could be tried again, that phrase was discussed with trial counsel and McDaniel's counsel wanted it in the instruction. The district court's supplemental instruction was not plain error and did not prejudice McDaniel.
McDaniel also argues that the supplemental instruction contradicted the previous written instructions. Instruction No. 1 stated: "It now becomes my duty to instruct you in the law. All questions of fact are to be decided by you, the jury, and to these facts you will apply the law given to you in all these instructions, even though you believe the law should be otherwise." And the supplemental instruction stated:
The law is as I have stated it to you and instructed you. If you have any disagreements or questions about the law, I may be able to clarify those, if you should submit a written question to me other than the one you submitted before. Any issues on the law should be my problem, not yours. If you disagree over what the evidence showed, then only you can resolve that conflict, if it is to be resolved.
Both instructions state that the judge will instruct on the law and that the jury is the fact finder. When read together, the instructions state that the jury is to apply the law, as given by the court, to the facts. We find no contradiction between instruction No. 1 and the supplemental instruction.
In summary, although the supplemental instruction should have been written rather than oral, McDaniel is prejudiced thereby only if the instruction was improper. We have reviewed the instruction for plain error, given the lack of an objection thereto, and we do not find plain error, for the reasons detailed above. This assignment of error is without merit.

Ineffective Assistance of Counsel.
McDaniel argues that he was denied his right to effective assistance of counsel because of his trial counsel's failure to object to (1) the erroneous jury instructions referenced above and (2) the evidence concerning Obermier's injury.
*184 Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. State v. Hubbard, 267 Neb. 316, 673 N.W.2d 567 (2004). When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. Id.
The Nebraska Supreme Court has adopted the two-part test for proving a claim of ineffective assistance of counsel, as set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See State v. Nielsen, 243 Neb. 202, 498 N.W.2d 527 (1993). To establish that he or she was denied effective assistance of counsel, the defendant must show that counsel was deficient, meaning that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. See Strickland, supra. Second, the defendant must make a showing that he or she was prejudiced by the actions or inactions of his or her counsel by demonstrating with reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See id. The two-part test for ineffective assistance of counsel may be addressed in any order. See Nielsen, supra. If it is easier to dispose of the ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. Id.
With respect to the issue of trial counsel's failure to timely object to evidence of the nature and extent of the injury suffered by Obermier on the ground that the trial court should have made the State accept the stipulation, we have already found that any such objections, even if timely made, would have been properly overruled. Thus, the record is adequate to review and resolve this claim. McDaniel was not prejudiced, and this claim of ineffectiveness of trial counsel is resolved against McDaniel.
With respect to the issues of the jury instructions and trial counsel's failure to object to them, while questions of counsel's trial tactics may be involved and such are not in this record, we find that the record before us is adequate to address such claims on the prejudice prong of the test for ineffective assistance of counsel. Given our resolution of the jury instruction issues above, it naturally follows that McDaniel was not prejudiced by any shortcoming of trial counsel concerning the instruction. Thus, this claim of ineffectiveness is without merit.

CONCLUSION
For the reasons stated above, we find that the State was not required to stipulate to the nature or seriousness of Obermier's injuries. Furthermore, we find no plain error with regard to either written instruction No. 15 or the supplemental instruction as given to the jury.
The record is sufficient for us to determine that McDaniel was not deprived of effective assistance of counsel concerning the admission of the evidence of the nature and extent of the injury suffered by Obermier, that any unmade objections to such evidence would have been without merit, and that as a result, McDaniel could not have been prejudiced and this ineffectiveness claim is without merit. We find that the record is sufficient to address trial counsel's alleged ineffectiveness at this time with respect to the jury instructions and that such claims fail for lack of prejudice. *185 Therefore, we affirm the conviction and sentence.
AFFIRMED.