IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PEREZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EMMANUEL PEREZ, APPELLANT.

Filed December 22, 2020.    No. A-19-1189.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Darik J. Von Loh, and Caleb Hoesing, Senior Certified Law Student, of Hernandez Frantz, Von Loh, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Emmanuel Perez was convicted by a jury of one count of first degree sexual assault of a child and one count of incest. He was subsequently sentenced to a total of 40 to 50 years' imprisonment. He appeals from his convictions and sentences here. On appeal, Perez assigns numerous errors, including that the district court erred in denying his motion to continue the trial, in making certain evidentiary rulings, in overruling his motion for a directed verdict, in instructing the jury, and in imposing excessive sentences. Perez also alleges that he received ineffective assistance of trial counsel in various respects. Upon our review, we affirm Perez' convictions and sentences.

## II. BACKGROUND

Perez was initially charged with first degree sexual assault of a child, a Class IB felony. The State later added an additional charge, incest, a Class IIA felony. The acts giving rise to the charges occurred between October 2017 and August 2018. The named victim in each count was Perez' stepdaughter, J.R., born in December 2002.

In August 2018, J.R., who was then 15 years old, disclosed to a friend that her stepfather, Perez, had been sexually assaulting her since she was in elementary school. J.R.'s friend's father contacted law enforcement and an investigation followed. As a part of this investigation, Perez was interviewed by law enforcement and confessed to having J.R. perform fellatio on him at least 10 times. He explained that J.R. did this in order to avoid being punished or to have a previously imposed punishment withdrawn. Perez also confessed to engaging in "booby hugs" with J.R. on a regular basis. These hugs occurred when J.R. was not wearing any clothing on the top half of her body. After this interview, Perez was arrested and charged as described above.

At trial, in addition to evidence of Perez' confession, the State offered the testimony of J.R., J.R.'s mother, and two of J.R.'s friends whom she had told about the sexual abuse. The State also offered the results of DNA analyses conducted on J.R.'s bedding and other objects from the home she shared with Perez.

J.R. testified that in 2017 when she was in eighth grade, she and her family, including Perez, her mother, and two younger brothers, moved to Lincoln, Nebraska, from Eagle Pass, Texas. While in Lincoln, the family resided in a three bedroom trailer home. Perez lost his job approximately 6 months after moving to Lincoln. As such, Perez stayed home with J.R. and her brothers while J.R.'s mother worked long hours, including overnights, outside of the home.

J.R. explained that Perez subjected her to sexual abuse on a regular basis. She described having to give Perez a hug when she was either completely naked ("naked hug") or was not wearing any clothes above her waist ("booby hug"). In fact, J.R. believed that other members of her family had observed her engaging in a "booby hug" with Perez. J.R. described performing fellatio on Perez and using her hand to sexually stimulate him. She also described a "sex toy" that Perez had her use on him on three separate occasions. J.R. indicated that Perez had twice attempted to put his penis in her vagina, but that she had not let him. J.R. was able to specifically describe unique characteristics regarding Perez' penis. Her description of his penis was corroborated at trial by her mother.

During her testimony, J.R. described that the last time she had a sexual encounter with Perez was approximately 2 weeks prior to reporting the sexual abuse to law enforcement in August 2018. On this occasion, she was in her room shortly after having eaten a meal. Perez came into her room and asked her "for head," which she understood to mean that he wanted her to put his penis inside of her mouth. She indicated that she agreed to his request because she "didn't want trouble later" and did not want to feel guilty about not doing as Perez asked. Perez positioned himself on J.R.'s bed such that the top half of his body was laying down, his knees were hanging over the bed, and his feet were on the floor. J.R. sat on the floor in between Perez' legs and put his penis in her mouth. Because J.R. had just eaten, she gagged on Perez' penis and vomited multiple times on her bedding. After Perez had ejaculated, J.R. cleaned up her bedding by placing it all in a reusable grocery bag and hiding the bag in her closet. J.R. explained that she did not want her mother to see

the bedding covered in vomit in the laundry because then her mother would ask questions. Subsequent testing of J.R.'s bedding revealed the presence of sperm. Perez was included as a contributor of the DNA from the sperm. In fact, the test revealed that "the DNA profile is $1.42 \times 10^{27}$ times more likely if it had originated from [] Perez than if it had originated from an unknown, unrelated individual selected at random in the population."

J.R. testified that during her eighth grade year, she dated two boys her own age. In order to receive Perez' permission to see these boys, J.R. had to perform fellatio on Perez. Additionally, Perez encouraged J.R. to have sexual contact with her boyfriends, even giving her a condom and sending her and her first boyfriend to J.R.'s bedroom. J.R. admitted to being sexually active with both boyfriends.

The State offered into evidence text messages sent between Perez and J.R. These text messages indicate that Perez sent J.R. sexually explicit images and links to pornography. He also sent text messages discussing his sexual relationship with J.R. In one text, Perez told J.R., "If I would have told [your mother] that you give better head than her. You think she will allow you to ever talk to me." J.R. testified that this was not the only time that Perez told her that she "give[s] better head than [her mother]." In another text, Perez told J.R., "OK then let's both get naked and I want hugs from you and kisses."

J.R.'s mother testified that she had witnessed J.R. and Perez engage in a "booby hug" where J.R. was either wearing only a towel or was wearing only shorts and no shirt. Additionally, she was aware that J.R. and Perez were texting each other with inappropriate and sexual images. She indicated she talked to both J.R. and Perez about their actions.

J.R.'s mother explained that she and Perez were now separated and that she had filed for divorce. However, even when they were still living together, they "rare[ly]" had sexual intercourse because of her busy work schedule. She indicated she would occasionally perform fellatio on him.

One of J.R.'s former boyfriends, C.V., testified that J.R. told him that Perez was sexually abusing her. Specifically, C.V. remembered J.R. telling him that Perez put his fingers inside of her vagina. J.R. was "crying and sobbing" during this conversation. C.V. also testified that Perez subsequently discovered that J.R. had told him about the sexual abuse. Perez sent C.V. a text message, wanting to talk. During his conversation with Perez, Perez admitted to putting his fingers inside of J.R.'s vagina and hugging her while she was not clothed. Perez also admitted to showing J.R. pornography in order to teach her how to perform fellatio properly. Perez explained to C.V. that he did these things only to punish J.R. and not for Perez' own sexual pleasure. Perez then showed C.V. his gun collection and threatened to hurt him if he told anyone what was happening between Perez and J.R. C.V. also testified that he had witnessed Perez touching J.R.'s breast.

Finally, C.V. testified that Perez offered to buy him condoms so that C.V. could have sexual intercourse with J.R. He explained that Perez readily encouraged the two of them to have a sexual relationship.

The jury found Perez guilty of both first degree sexual assault of a child and incest. The district court subsequently sentenced him to concurrent sentences of 40 to 50 years' imprisonment for first degree sexual assault of a child and 7 to 12 years' imprisonment for incest. His sentence for first degree sexual assault of a child included a 15-year mandatory minimum. Perez appeals from his convictions and sentences here.

Additional facts and circumstances relevant to the assigned errors will be discussed below.

## III. ASSIGNMENTS OF ERROR

On appeal, Perez asserts that the district court erred in (1) denying his motion to continue the trial so that he could obtain new trial counsel, (2) permitting J.R. to testify regarding uncharged sexual abuse perpetrated upon her by Perez when they were residing in Texas, (3) allowing the State to offer evidence of text messages sent by J.R. to Perez, (4) providing the jury with an improper limiting instruction regarding the text messages between J.R. and Perez, (5) denying his motion for a directed verdict at the close of the State's case, (6) and imposing excessive sentences.

Perez also asserts in this direct appeal that he was provided with ineffective assistance of trial counsel when counsel failed to object to the admission of exhibit 35, a piece of a torn condom wrapper; failed to object to the State asking leading questions of J.R.; failed to object to the district court's instructions to the jury; and failed to argue in support of the motion to dismiss and motion for a directed verdict.

## IV. ANALYSIS

### 1. MOTION TO CONTINUE TRIAL

#### (a) Standard of Review

A continuance is a matter for the discretion of the trial court, whose ruling on a motion for continuance will be upheld unless such ruling constitutes an abuse of discretion. *State v. Sluyter*, 224 Neb. 768, 401 N.W.2d 480 (1987).

#### (b) Additional Background

At a hearing on July 29, 2019, Perez' trial counsel made an oral motion to continue the trial beyond the August jury term because counsel needed additional time to prepare for trial and discovery was not yet completed. Although the State did not object to the motion to continue, the district court explained that it had concerns about granting the motion. The court stated, "Well, I'm somewhat concerned in that this case has been pending, at least in this court, since October of 2018, so that would make it more than a year. . . . The matter has [previously] been continued several times on the motion of [Perez]." Ultimately, the district court granted the motion to continue and scheduled the trial to begin during the jury term commencing October 15.

On September 6, 2019, the State and Perez appeared before the district court and indicated that a plea agreement had been reached. The State explained that, pursuant to the plea agreement, Perez would plead no contest to first degree sexual assault of a child. In exchange for Perez' no contest plea, the State agreed not to file any additional charges arising out of the investigation. Perez indicated to the court his intention to plead no contest to first degree sexual assault of a child. However, during the course of the court's colloquy, Perez informed the court that he had not been given his blood pressure medication before he was transported to court that morning. Perez also indicated that because he had not taken the medication, his ability to understand the court proceedings may be diminished. Perez asked the court to reschedule the plea hearing. The court continued the plea hearing to 3 days later, on September 9.

At the hearing on September 9, 2019, Perez again indicated his intention to plead no contest to first degree sexual assault of a child pursuant to the plea agreement with the State. However, Perez also indicated to the district court that he did not understand the plea agreement and that he

did not believe that "during the course of the case, [he has] had a fair trial." Upon further questioning by the court, Perez stated that he was "[n]ot completely" satisfied with his trial counsel. Perez explained, "I've asked my attorney for multiple responses and haven't got them -- haven't got them accomplished or even attempted." Perez indicated that he did not believe his trial counsel to be competent to represent him. The district court declined to accept Perez' no contest plea and scheduled a hearing for September 19 to determine whether trial counsel should be discharged.

At the hearing on September 19, 2019, Perez informed the district court that he wished to discharge his court-appointed trial counsel because he and his family were working toward hiring private counsel to represent him at trial. Perez explained that his sister had contacted a few attorneys and that he, himself, attempted to contact an attorney the day prior to the hearing, but was not successful. Perez informed the court that if was not able to hire a private attorney, he did not wish to represent himself, but would instead rely on his current court-appointed counsel. However, Perez reiterated that he was not satisfied with trial counsel's representation, as counsel had, apparently, refused to investigate whether the video recording of his police interview had been altered or whether his medical condition may have played a role in the statements he made during that interview.

Because Perez had not hired new counsel by the time of the September 19, 2019, hearing, the district court declined to discharge Perez' appointed trial counsel at that time. Instead, the court continued any further proceedings for 2 weeks in order to provide Perez with time to hire new counsel. However, the district court specifically informed Perez as follows:

> Well, this matter is set for jury trial on the 15th of October, 2019. My notes indicate that the Information in this case was filed October 24, 2018, so that's just about 12 months ago. I can tell you that I'm not inclined to continue any trial in this matter. The matter has been set for plea twice and that has not happened. And I'm sure when you add up the county court time this matter has been pending for well over a year and here we are a month before trial and you are telling me that you now want to hire an attorney, that attorney needs to make an appearance and needs to be ready to go to trial on October 15, 2019.

On October 4, 2019, 2 weeks after the previous hearing, Perez appeared before the district court and indicated he had been unable to hire new counsel. He explained, "I haven't been able to get in touch with my family, so I don't know what the situation is. I don't know what's happening." Perez again reiterated that he had ongoing "trust issues" with his current, court-appointed counsel. The court found no "legal reason to discharge court-appointed counsel and to reappoint other counsel in this matter." The district court then proceeded to consider pretrial motions filed by the parties.

(c) Analysis

On appeal, Perez assigns as error the district court's failure to grant his "motion to continue when he was attempting to secure private counsel." Brief for appellant at 35. However, we must note that Perez never made a formal motion to continue the proceedings so that he could hire new counsel. At the September 19, 2019, hearing, the district court indicated it was continuing all proceedings for 2 weeks so that Perez could hire new counsel. When Perez appeared at the next

- 5 -

hearing 2 weeks later, he indicated that he had not hired new counsel, but he did not request any further continuance of the pretrial proceedings or of the trial so that he could continue to seek new counsel.

In the argument section of his brief, Perez appears to take issue with the district court's statement that it would not continue the trial scheduled for October 2019, even if he did secure new counsel. Perez argues that this statement was an abuse of discretion because he would have had "good cause" to continue the trial had new counsel been hired, especially when he had clearly articulated his distrust of his court-appointed counsel. Essentially, Perez asks us to find that the district court abused its discretion in stating what it might have done had new counsel been hired. We decline to speculate whether the district court would or would not have continued the October trial if new counsel had entered an appearance in the proceedings.

When Perez appeared at the October 4, 2019, hearing, he had not hired new counsel. In fact, he did not offer the court any indication that he had made any efforts toward hiring new counsel during the 2 weeks afforded to him to do so. Perez does not assign as error the district court's decision not to discharge his court-appointed counsel or its decision to immediately resume the pretrial proceedings. Moreover, Perez cannot demonstrate that he was prejudiced by the court's failure to continue the proceedings any further, as there is no indication that his court-appointed counsel was in any way unprepared to represent Perez either during the pretrial proceedings or during the trial which began on October 16. We do not find any abuse of discretion in the court's failure to continue the October hearing so that Perez could retain new counsel.

### 2. J.R.'S TESTIMONY REGARDING SEXUAL ABUSE IN TEXAS

#### (a) Standard of Review

An appellate court reviews for abuse of discretion a trial court's evidentiary rulings on the admissibility of a defendant's other crimes or bad acts under Neb. Rev. Stat. § 27-404(2) (Reissue 2016), or under the inextricably intertwined exception to the rule. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

#### (b) Additional Background

Prior to trial, the State provided notice to both Perez and to the district court of its intent to offer evidence that Perez had sexually assaulted J.R. prior to the dates listed in the information. Specifically, the State explained that, at trial, it intended to offer evidence that Perez had sexually assaulted J.R. beginning when she was in elementary school when the parties lived outside of Nebraska. In response to the State's notice, Perez filed a motion requesting that the court hold an evidentiary hearing pursuant to § 27-404(3) to determine the admissibility of such evidence. Section 27-404(3) provides that evidence of other crimes, wrongs, or acts of the accused may be admissible if the State proves to the court by clear and convincing evidence that the accused actually committed the crime, wrong, or act. Such determination is to be made outside the presence of a jury. § 27-404(3).

At a hearing held on October 4, 2019, the district court considered whether to conduct an evidentiary hearing pursuant to § 27-404(3) to determine the admissibility of the evidence of the prior sexual abuse. At the hearing, the State asserted that an evidentiary hearing was not necessary

because the evidence of the prior sexual abuse was "inextricably intertwined" with the evidence of the charged offenses. The State explained:

> The sexual abuse by [Perez] of [J.R.] began back in Texas when [J.R.] was younger and that's kind of how it all started and it still happened when the parties moved here to Lincoln. You know, had this -- these parties lived in Lincoln the entire time, I might have further charges relating to that but, you know, I can only handle what has happened here in Lancaster County. So I would just state it is a continuing offense for the factual basis -- or the factual setting for what happened here in Lincoln.

Perez disagreed that the evidence of the sexual abuse in Texas was inextricably intertwined with the evidence of the charged offenses. He argued that there was too much separation between the events in terms of time and geography and that the sexual abuse which allegedly occurred in Texas was of a different nature than the abuse which had occurred in Nebraska.

In an order filed on October 15, 2019, the district court overruled Perez' request for an evidentiary hearing pursuant to § 27-404(3) and granted the State's request to offer evidence at trial of the incidents of sexual assault which took place in Texas. The court stated:

> This Court finds that the evidence of the prior sexual assault does not fall under Section 27-404 as it is inextricably intertwined with the charged offenses and forms the factual setting of the crimes at issue. The State is entitled to present a coherent picture of the facts of the crimes charged. The State's evidence of the prior sexual assaults is more probative than prejudicial and shall be admissible.

At trial, J.R. testified, over Perez' continuing objection, regarding the sexual abuse which occurred when she and her family, including Perez, were residing in Texas. J.R. explained that the sexual abuse perpetrated on her by Perez began in Texas when she was still in elementary school. Initially, Perez would grab and touch her "inappropriately," including touching her on her breasts and her vagina. When J.R. would move away from Perez in order to end the touching, Perez would make her feel as if she had done something wrong. Perez would then allow J.R. to make it up to him by giving him a hug when she was "fully nude." Perez referred to this as a "naked hug."

J.R. also testified that Perez would make inappropriate comments to her while they still resided in Texas. These comments included telling J.R. that her body was just like her mother's when her mother was younger and telling her that she "had the perfect size of boobs that he liked, that he enjoyed." J.R. described Perez showing her pornography and sending pornographic images to her electronic devices. J.R. described how Perez' "favorite" type of pornography involved stepfathers having sexual intercourse with their stepdaughters.

Also in Texas, Perez would punish J.R. for innocuous actions by giving her "three choices." She could either give him a naked hug, perform fellatio on him, or have sexual intercourse with him. J.R. testified that she would always choose to engage in a naked hug, but sometimes Perez would not include that as an option. When that occurred, J.R. would choose to perform fellatio on Perez. J.R. testified that she could remember performing fellatio on Perez on at least 40 occasions in Texas. She also testified she used her hands to sexually stimulate Perez.

J.R. further explained that she could remember a few occasions when Perez attempted to put his penis inside of her vagina when they resided in Texas. J.R. testified that this hurt her and

- 7 -

she would try to get away from Perez. In fact, J.R. testified that while living in Texas, she tried to avoid performing sexual acts on Perez by running away from home for hours at a time, by staying late after school, and by hiding on the roof of the family's home. J.R. indicated that Perez would become upset with her when she tried to hide from him. He insulted her by calling her a "slut" and a "bad person." He also told her that her mother did not care about her. Perez told J.R. not to tell anyone about what occurred between them. He described it as their "little secret."

(c) Analysis

On appeal, Perez argues that the district court erred in failing to hold an evidentiary hearing pursuant to § 27-404(3) and in allowing J.R. to testify about the alleged incidents of sexual assault which occurred in Texas. Specifically, Perez asserts, "The alleged acts in Texas were completely different acts, were committed in another jurisdiction, were not related in time, and were not proof of the alleged crimes or alleged acts occurring in Nebraska the subject of this case." Brief for appellant at 23. Upon our review, we agree with the district court that § 27-404, also referred to as rule 404, did not apply, because the alleged Texas incidents were inextricably intertwined with the crimes charged. Further, since rule 404 did not apply, the court was not required to conduct a hearing under rule 404(3).

Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or is necessary for the prosecution to present a coherent picture of the charged crime. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). The State is entitled to present a coherent picture of the facts of the crime charged, and evidence of other conduct that forms an integral part of the crime charged is not rendered inadmissible under rule 404 merely because the acts are criminal in their own right, but have not been charged. *State v. Lee, supra.*

The Nebraska Supreme Court has previously upheld the admission of evidence under the inextricably intertwined rule when the defendant's other bad acts showed his pattern of sexually abusing a child or exposing the child to sexually explicit material. See, e.g., *State v. Lee, supra*; *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010). In this case, the evidence adduced at trial established that Perez engaged in a pattern of sexually abusing J.R. and exposing her to sexually explicit material beginning when they resided in Texas. While in Texas, Perez began sexually assaulting J.R. by touching her inappropriately, engaging her in hugs with him when she was undressed, and forcing her to perform fellatio on him as "punishment." Perez would make J.R. feel guilty if she did not do as he asked. Perez also regularly showed J.R. pornography, including images of stepfathers having sexual intercourse with their stepdaughters. Perez also told J.R. not to tell anyone about what was occurring between them and repeatedly told her that no one, including her mother, would believe her if she did tell.

After the family moved to Nebraska, the sexual abuse continued, seemingly without much, if any, interruption. The evidence presented at trial revealed that Perez and J.R. would often hug each other when J.R. was not fully clothed. In addition, J.R. testified that Perez would force her to perform fellatio on him as a form of punishment or as a way to get something that she wanted. J.R. testified that if she refused to perform sexual acts on Perez, she would feel guilty or he would make her feel as though she had done something wrong.

Perez confirmed J.R.'s account of the sexual abuse in Nebraska during his interview with police when he admitted to having J.R. perform fellatio on him as either a form of punishment or a way to avoid a previously imposed punishment. Copies of electronic messages between J.R. and Perez which were received at trial revealed that Perez continued to send J.R. pornographic and sexually explicit images when they resided in Nebraska.

J.R.'s testimony of the Texas incidents forms the factual setting of the charged offenses and is necessary to present a complete and coherent picture of the facts of this case. Such evidence showed a pattern of Perez sexually abusing J.R. and exposing her to sexually explicit material over a lengthy period of time. Such evidence also provides some explanation concerning J.R.'s ready compliance with the sexual abuse upon arriving in Nebraska and demonstrates the overarching sexual and otherwise inappropriate nature of her relationship with Perez. Because the sexual abuse which occurred in Texas is inextricably intertwined with the sexual abuse which occurred in Nebraska, it cannot be said that the district court abused its discretion in admitting the testimony regarding the alleged Texas incidents into evidence.

### 3. ELECTRONIC MESSAGES

### (a) Standard of Review

Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated, and an appellate court reviews a trial court's ruling on authentication for an abuse of discretion. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

Apart from rulings under the residual hearsay exception, we review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination to admit evidence over a hearsay objection. *Id*.

### (b) Additional Background

During J.R.'s direct examination, the State sought to introduce three exhibits which contained the substance of text messages between J.R. and Perez prior to J.R.'s disclosure of sexual abuse. Exhibit 12 contained text messages that were removed from J.R.'s cellular telephone, which she had provided to law enforcement. Perez did not object to the admission of exhibit 12. Exhibit 13 contained text messages that were removed from Perez' cellular telephone, which had been obtained by law enforcement upon his arrest. Exhibit 14 contained enlarged images which were included in some of the messages between Perez and J.R.

Perez' counsel questioned J.R. regarding her recollection of the text messages and images contained in exhibits 13 and 14. During this questioning, J.R. generally testified that after reviewing the entirety of exhibit 13, it matched her recollection of the messages she received from Perez. However, she also indicated that she did not remember reading or sending certain messages, or "the reason behind the message." J.R. indicated that even though she did not remember certain messages, she believed that those messages existed on Perez' cellular telephone and that either she or Perez had sent them. J.R. did testify that she remembered each of the images contained in exhibit 14 as being sent from Perez' cellular telephone to her. After questioning J.R., Perez objected to the exhibits on the basis of foundation and hearsay. Specifically, Perez argued that J.R. indicated that she was not familiar with all of the information contained within the exhibits.

The court permitted the State to question J.R. further before ruling on Perez' objections. During its questioning, the State noted that exhibit 13, in particular, contained 63 pages of text messages spanning a period of 8 months. J.R. indicated that her inability to remember every single text message in the exhibit was related to the number of text messages and the amount of time that was covered in the messages. She also testified that, to her knowledge, no one else had ever used her cellular telephone to send a message to Perez, nor did she know of anyone who had used Perez' telephone to send a message to her.

After the State's questions, Perez renewed his foundational objection to the exhibits. The State responded as follows:

> I would say she's laid enough foundation. She doesn't have any reason to believe anyone else sent it other than Mr. Perez. There is no one else who would have been talking to her. There is a lot of messages. Surely it is reasonable somebody doesn't remember everything they send on every single message especially if there is over 1,600 of them.

The district court overruled Perez' objection to exhibits 13 and 14 and permitted the State to introduce those exhibits into evidence. The court explained, "I think that foundation has been met in this matter. I think that those questions go to weight more than foundation." The court noted that it had already received exhibit 12 without any objection by Perez.

(c) Analysis

On appeal, Perez asserts that the district court erred in admitting into evidence exhibits 12, 13, and 14. He argues that the exhibits were not properly authenticated and were hearsay.

We first note that, contrary to Perez' arguments on appeal, during the trial, he did not object to the admission of exhibit 12, which contained text messages copied from J.R.'s cellular telephone. Because Perez did not object to this evidence at trial, he has waived appellate review of its admissibility. See *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984) (if party does not make timely objection to evidence, party waives right on appeal to assert prejudicial error). As such, we consider only Perez' arguments as to exhibits 13 and 14.

Neb. Rev. Stat. § 27-901 (Reissue 2016) requires authentication or identification of evidence sufficient to support a finding that a matter is what the proponent claims as a condition precedent for admission. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Authentication or identification under § 27-901, is not a high hurdle. *State v. Burries, supra*. A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018). If the evidence is sufficient to support a finding that the evidence is what it purports to be, the rule is satisfied. *State v. Burries, supra*.

Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages. *State v. Savage, supra*. The proponent of text messages is not required to conclusively prove who authored the messages. *Id*. The possibility of an alteration or misuse by another generally goes to weight, not admissibility. *Id*.

Here, Perez argues that the State failed to satisfy either component of foundation for the admissibility of the text messages contained in exhibit 13 because J.R. affirmatively indicated that

- 10 -

she did not remember receiving or sending certain messages and she was unable to recall the context of some of the messages. We agree with Perez' assertion that J.R. expressed some hesitancy in her ability to recall every single text message sent between she and Perez during an 8-month period. However, we must also note that ultimately, J.R. testified to her belief that all of the text messages had been sent by either her or Perez. She indicated that, to her knowledge, no one else had ever used their cellular telephones to send messages. She believed that all of the messages she received from Perez' telephone number were sent by Perez. Moreover, she also affirmatively indicated that she recalled sending or receiving most of the messages. We agree with the district court that the State provided sufficient foundation for the admissibility of the text messages contained in exhibit 13. To the extent that J.R. testified that she could not specifically remember sending or receiving certain text messages contained within the lengthy exhibit, such testimony goes to the weight of the exhibit, not the admissibility.

We note that although Perez includes exhibit 14 as a part of his argument, he does not make any specific assertions in his appellate brief regarding any lack of foundation for this exhibit. And, upon our review, we find that J.R. provided sufficient foundation when she testified that she clearly remembered sending or receiving each of the images contained in exhibit 14 and that the images were a part of her electronic conversations with Perez.

Finally, to the extent that Perez reasserts his hearsay objection to exhibits 13 and 14 in this appeal, we find that the State sufficiently demonstrated that Perez authored the text messages sent from his cellular telephone. In *State v. Savage, supra*, the court held that the State must prove by a greater weight of the evidence that a defendant authored or made a statement in order to establish preliminary admissibility as nonhearsay under Neb. Rev. Stat. § 27-801 (Reissue 2016). Here, the State offered evidence demonstrating that the text messages were sent from a cellular telephone used exclusively by Perez. In addition, J.R. testified that to her knowledge, no one but Perez had sent her a message from his telephone. In addition, the content of the messages included information that was shared only between J.R. and Perez. Such evidence is sufficient to demonstrate that Perez' text messages to J.R. constituted nonhearsay statements.

We will address Perez' hearsay objection to the text messages authored by J.R. in the following section.

### 4. LIMITING INSTRUCTION

#### (a) Standard of Review

Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. McDaniel*, 17 Neb. App. 725, 771 N.W.2d 173 (2009). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id*.

#### (b) Additional Background

Prior to trial, Perez filed a motion in limine asking the district court "to exclude any evidence contained in text messages purportedly with [Perez] that are written communication attributed to a person other than [Perez]. At a subsequent hearing, the State opposed Perez' motion

in limine. It explained that it intended to offer evidence of text messages exchanged between J.R. and Perez. The State asserted that anything that J.R. "said in the messages to [Perez] is not being used necessarily for the truth of the matter asserted but to give context to [Perez'] statements in both of those exhibits." After the district court reviewed transcripts of the text messages, it overruled Perez' motion in limine. Perez renewed his motion in limine at trial. The district court again overruled the motion. However, the district court did agree to provide to the jury a limiting instruction regarding the text messages authored by J.R. That instruction was read in open court prior to the jury hearing any evidence regarding the text messages. It was also read to the jury as a part of its formal jury instructions prior to deliberations. The instruction read as follows:

> Ladies and gentlemen, you are about to hear evidence of conversations between . . . Perez and [J.R.] in the form of text messages. [J.R.]'s statements in those conversations are not received for the truth of the matters asserted in those statements. Her statements are received for the limited purpose of placing conversation and statements of . . . Perez in context. You are to consider the statements of [J.R.] in those texts only for that limited purpose and none other.

When given the opportunity, Perez did not make any objection to the instruction provided to the jury.

(c) Analysis

On appeal, Perez argues that the instruction provided to the jury regarding the text messages was "inadequate." Brief for appellant at 34. Specifically, Perez asserts, "The instruction fails in that it does not state J.R.'s statements are hearsay, and that the texts sent by J.R. are not evidence." *Id*. However, as we stated above, Perez did not object to the instruction at trial. The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *State v. McDaniel, supra*. Therefore, we simply review the instruction for plain error.

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. Perez argues that the instruction given to the jury was inadequate because it failed to state that J.R.'s statements in the text messages are hearsay and are not evidence. Upon our reading of the jury instruction actually provided by the district court, we find that it was not necessary to provide a specific reference to J.R.'s statements in the texts constituting hearsay and not being evidence. The instruction clearly indicated to the jury that it could only consider J.R.'s statements as context for Perez' statements and not for the truth of the matters asserted. Essentially, the instruction told the jury not to consider J.R.'s statements as substantive evidence. Moreover, the district court's failure to inform the jury that J.R.'s statements were "hearsay" was not in any way erroneous, as most lay persons on a jury are probably not familiar with that legal terminology. We find no plain error in the instruction provided by the district court regarding J.R.'s statements in the text messages.

### 5. MOTION FOR DIRECTED VERDICT

#### (a) Standard of Review

Whether styled as a motion for judgment of acquittal, motion for directed verdict, or motion to dismiss, these motions all have the same effect when used to challenge the sufficiency of the State's evidence at the conclusion of the State's case or the conclusion of the evidence. *State v. Malone*, 26 Neb. App. 121, 917 N.W.2d 164 (2018). In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

#### (b) Analysis

Perez made an oral motion to dismiss the charges against him at the close of the State's presentation of evidence. The district court overruled the motion to dismiss. Perez renewed the motion by making a motion for a directed verdict after resting without presenting any further evidence. The court overruled this motion as well.

On appeal, Perez asserts that the district court erred in overruling the motions. Essentially, Perez challenges the sufficiency of the evidence presented by the State. Upon our review, we find sufficient evidence was presented to support Perez' convictions for first degree sexual assault of a child and incest. Accordingly, we affirm the decisions of the district court to overrule the motion to dismiss and the motion for a directed verdict.

Perez was convicted of first degree sexual assault of a child pursuant to Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016). That section provides: "A person commits sexual assault of a child in the first degree . . . [w]hen he or she subjects another person who is at least twelve years of age but less than sixteen years of age to sexual penetration and the actor is twenty-five years of age or older." He was also convicted of incest pursuant to Neb. Rev. Stat. § 28-703 (Reissue 2016). That section provides, in relevant part: "[A]ny person who engages in sexual penetration with his or her stepchild who is under nineteen years of age commits incest." On appeal, Perez contends that the State did not present sufficient evidence to prove him guilty of either charge because the State failed to sufficiently demonstrate that he subjected J.R. to sexual penetration.

> Sexual penetration is defined in Neb. Rev. Stat. § 28-318(6) (Reissue 2016) as
> [S]exual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen[.]

At trial, J.R. testified that Perez had forced her to perform fellatio on him on numerous occasions since they moved to Nebraska in 2017. She described putting Perez' penis into her mouth until he ejaculated. She further described how she would sometimes gag or vomit during these occasions.

DNA evidence obtained from J.R.'s comforter corroborated her account of the fellatio, as sperm from Perez was located on the comforter and there was no other reason for such sperm to be present. Furthermore, Perez confessed to law enforcement that J.R. performed fellatio on him at least ten different times. In viewing this evidence in the light most favorable to the State, we find a rational trier of fact could have found evidence of sexual penetration beyond a reasonable doubt.

In his brief on appeal, Perez challenges J.R.'s credibility. However, as we have often stated, in determining the sufficiency of the evidence to sustain a conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Hvistendahl*, 225 Neb. 315, 405 N.W.2d 273 (1987). Such matters are for the trier of fact. *Id*. The jury heard J.R.'s testimony, including the challenges to her credibility made during Perez' cross-examination of her. Clearly, the jury believed J.R. to be a credible witness and believed that Perez subjected her to sexual penetration. We will not reevaluate the jury's credibility determination in this appeal. However, we do note that there was other evidence presented at trial which supported the jury's finding that Perez sexually penetrated J.R., including Perez' own statement to police.

There was sufficient evidence presented to support Perez' convictions for first degree sexual assault of a child and incest. Accordingly, we affirm the decisions of the district court to overrule Perez' motion to dismiss and motion for a directed verdict.

### 6. EXCESSIVE SENTENCES

### (a) Standard of Review

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive the defendant of a substantial right and a just result. *State v. Oldenburg*, 10 Neb. App. 104, 628 N.W.2d 278 (2001).

### (b) Analysis

Perez argues that the district court imposed an excessive sentence for each of his two convictions. We disagree.

In imposing a sentence, the trial court must consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). Where a sentence imposed within statutory limits is alleged to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the aforementioned factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Oldenburg, supra*.

Perez was convicted of two criminal charges: (1) first degree sexual assault of a child, a Class IB felony carrying a statutory penalty of 20 years' to life imprisonment, including a mandatory minimum sentence of 15 years, see § 28-319.01(2) and Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018), and (2) incest, a Class IIA felony carrying a maximum statutory penalty of 20 years' imprisonment, see § 28-703 and § 28-105.

At the sentencing hearing, Perez' counsel explained that Perez "does stand by his plea of not guilty in this case[,] despite being found guilty by a jury." The presentence investigation report indicates that Perez continuously and repeatedly denied his guilt during his interview and also denied confessing to law enforcement. He told the probation officer who conducted the investigation that he committed "more of a 2nd and 3rd degree sexual assault than a first degree assault." During the sentencing hearing, counsel also noted that testing conducted as a part of the presentence investigation indicated that Perez posed a medium-low risk of reoffense in general and a low risk to reoffend as a sexual offender. Counsel reminded the district court of Perez' assertions that he was a victim of sexual assault when he was younger.

Ultimately, as to his conviction for first degree sexual assault of a child, the district court sentenced Perez to 40 to 50 years' imprisonment, including a mandatory minimum of 15 years, such that he must serve 27½ years' imprisonment to be eligible for parole and must serve 32½ years' imprisonment prior to mandatory discharge. As to his conviction for incest, the district court sentenced Perez to a concurrent term of 7 to 12 years' imprisonment. Each of these sentences was within the relevant statutory requirements for sentencing. See § 28-105.

In his brief on appeal, Perez asserts that the district court failed to adequately consider all of the relevant sentencing factors. Specifically, Perez argues that the district court failed to consider that he does not have any criminal history and that he, himself, was a victim of sexual assault when he was a teenager. In addition, Perez contends that the district court should have given more weight to the lack of violence involved in his crimes and to his explanation that "there was no sexual motive to any of the alleged acts," rather the only motive was a form of punishment for J.R. Brief for appellant at 46.

Contrary to Perez' assertions, it is clear from our record that the district court took into account all of the relevant factors in sentencing Perez and utilized the presentence investigation report generated for Perez. In fact, the district court stated,

I have considered the statutory factors as set forth under the law and the presentence investigation report and having regard for the nature and circumstances of the crimes, the history, character, and condition of [Perez], the Court finds that imprisonment of [Perez] is necessary for the protection of the public because the risk is substantial that, during any period of probation, he would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of his crimes and promote disrespect for the law.

The district court also specifically noted that Perez "has taken no responsibility for his offense. He's shown no remorse. He's essentially made life for [J.R.] unbearable, and he's ruined the lives of his family, [J.R.], and others surrounding this incident."

Based on the statements of the district court, it is clear that it adequately considered all of the relevant statutory factors in imposing a sentence, including Perez' character and circumstances and the serious nature of the events surrounding his convictions. We do not find that the court abused its discretion in sentencing Perez.

## 7. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### (a) Standard of Review

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

### (b) Analysis

On appeal, Perez alleges that he received ineffective assistance of trial counsel in four respects. First, he argues that his trial counsel failed to object on foundational grounds to the admission of exhibit 35, which was a partial condom wrapper. Second, he argues that his trial counsel failed to object to the jury instruction regarding J.R.'s statements within the text messages not being considered for the truth of the matters asserted. Third, he argues that his trial counsel failed to adequately argue in support of the motion to dismiss and motion for a directed verdict. Finally, Perez argues that trial counsel failed to object to the State asking leading questions of J.R. Perez has different counsel in this appeal than he had at the time of his trial and sentencing.

Before we address Perez' specific allegations of ineffective assistance of trial counsel, we recount the law which overlays our analysis of these claims.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). This is because the trial record reviewed on appeal is generally "'devoted to issues of guilt or innocence' and does not usually address issues of counsel's performance." *Id*. at 769, 848 N.W.2d at 578. The determining factor is whether the record is sufficient to adequately review the question. *State v. Filholm, supra*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Chairez, supra*.

If the record is sufficient to address the ineffective assistance of counsel claim, an appellate court reviews the factual findings of the lower court for clear error. *State v. Filholm, supra*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. See *State v. Filholm, supra*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). To show

prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

*(i) Failure to Object to Exhibit 35*

At trial, J.R. testified that Perez had given her a condom so that she could use it while having sexual intercourse with her then boyfriend. J.R. explained that she and her boyfriend never used the condom. She described the condom given to her by Perez as being in a grayish blue wrapper and having the name brand of "Trojan." The State then showed J.R. exhibit 35, which was a piece of a gray-colored condom wrapper. J.R. described exhibit 35 as "a Trojan condom," however she did not know where it came from or whether she had used the condom which had been inside of the wrapper. Exhibit 35 was then received into evidence without any objection from Perez.

During subsequent testimony, the State established that exhibit 35 had been found by its DNA analyst when she was examining items of bedding which were taken from a reusable grocery bag located by law enforcement in J.R.'s closet. Upon testing of the condom wrapper, J.R. was included as a contributor of touch DNA found on the wrapper. Both Perez and J.R.'s mother were excluded as contributors of DNA found on the wrapper.

On appeal, Perez asserts that his trial counsel provided ineffective assistance by failing to object on foundational grounds to the admission of exhibit 35. Perez generally argues that he was prejudiced by the admission of exhibit 35 because the exhibit had "no relation" to him and was merely an attempt by the State "to confuse the jury about the pertinent DNA evidence." Brief for appellant at 39. We disagree with Perez' assertions of prejudice. We find that he cannot demonstrate any prejudice from the admission of exhibit 35. He was excluded as a contributor to any DNA found on the condom wrapper. J.R. admitted to having a sexual relationship with two different boys her age at the time she was being sexually abused by Perez. She was included as a source of the DNA found on the wrapper. As such, the admission of exhibit 35 appears to be more exculpatory than it does prejudicial to Perez. We are unable to identify how the admission of exhibit 35 prejudiced Perez' defense. As such, even if trial counsel should or could have objected to exhibit 35 on foundational grounds, Perez was not prejudiced by the admission of the evidence. His claim of ineffective assistance of trial counsel in this regard must fail.

*(ii) Failure to Object to Jury Instruction*

Perez asserts that his trial counsel failed to object to the limiting instruction which was read to the jury prior to it hearing any evidence regarding the text messages between J.R. and Perez. As we discussed above, the limiting instruction informed the jury that it could not consider J.R.'s statements within the text messages for the truth of the matters asserted, but, rather, could only consider her statements as context for Perez' statements. Perez argues that counsel should have argued to the district court that the instruction was inadequate and incomplete. In his brief to this court, Perez refers back to his assertion that the instruction should have explicitly explained that J.R.'s statements within the texts are hearsay, and that the statements attributed to J.R. are not evidence.

Perez cannot demonstrate that he was prejudiced by trial counsel's failure to object to the instruction as written. As we explained above, the jury instruction adequately explained to the jury

that it was not to consider J.R.'s statements as substantive evidence. Additionally, it was unnecessary to include the term "hearsay" within the jury instruction, as most jurors would not understand that terminology. The instruction fully explained to the jury the permissible uses of J.R.'s statements.

### (iii) Failure to Provide Argument in Support of Motion to Dismiss and Motion for Directed Verdict

Perez asserts his trial counsel provided ineffective assistance when counsel failed to provide any argument to the court in support of the motion to dismiss made at the close of the State's presentation of evidence or the motion for a directed verdict made after the defense rested without presenting any evidence. Specifically, Perez argues:

> When no effort was put forward toward the motion to dismiss/directed verdict other than going through the motion to make the procedural movement, "the outcome of the proceeding would have been different" had trial counsel pointed out the evidentiary errors to the district court, especially those to the credibility of the testimony from J.R.

Brief for appellant at 41.

The standard for granting a motion for a directed verdict is whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009). As we explained more thoroughly in our analysis above, the district court properly overruled both the motion to dismiss and the motion for a directed verdict because the evidence presented by the State, if believed by the jury, was sufficient to prove that Perez committed both first degree sexual assault of a child and incest. Perez' guilt was properly decided by the jury, rather than by the court. Accordingly, no matter what argument defense counsel would or could have provided to the court in support of the motions, the district court would have still overruled the motion to dismiss and the motion for a directed verdict. Perez was not prejudiced by his counsel's failure to offer an argument in support of the motions.

### (iv) Failure to Object to State Asking J.R. Leading Questions

During the State's direct examination of J.R., she was asked about an incident when Perez believed that she and her boyfriend had sexual intercourse without using a condom. J.R. testified that Perez was, apparently, concerned that she had gotten pregnant from this incident. As a result, Perez directed her to go to the bathroom so that he could "check" to see if there was any sperm in her vagina. The State questioned J.R. as follows:

> Q: How did he check to see if there was any sperm in your vagina?
> A: I sat on top of the counter and opened my legs to see if I had any.
> Q: How did he check that?
> A: Um, he put his finger in my vagina to see if I had any and saying that -- saying that he knows -- he knows what it looks like when blood and cum mix together and stuff like that.
> Q: So did Mr. Perez, then, put his fingers in your vagina to check to see if you had semen in there?

- 18 -

A: Yes.

Q: And how long were his fingers in your vagina for?

A: For a few seconds.

Q: What was he doing with his fingers in your vagina?

A: He was feeling around to, um, check if I had any and if any came out.

Q: What happened after he had his fingers in your vagina and was checking?

A: Nothing came out and then after that, he ended up telling me to take a shower so I did.

On appeal, Perez asserts that his trial counsel provided ineffective assistance when counsel failed to object to the State asking leading questions of J.R. regarding the above described incident. Perez asserts that counsel's failure to object was prejudicial to him because J.R.'s testimony about Perez checking her vagina for sperm contradicted her earlier testimony that Perez had not penetrated her vagina when they lived in Nebraska.

In general, a question is leading when it is so framed as to suggest to the witness the answer which is desired of him. *State v. Hoffmeyer*, 187 Neb. 701, 193 N.W.2d 760 (1972). Conversely, a question is not leading where it does not in any way indicate or suggest the answer desired. *Id*. Perez has failed to explain how the State's questions posed to J.R. were leading. And, upon our careful review of the dialogue between the State and J.R., we do not find the State's questions to be leading or otherwise improper. The closest the State came to leading J.R. with its questions was when it asked, "So did Mr. Perez, then, put his fingers in your vagina to check to see if you had semen in there?" However, a careful reading of this section of the record reveals that the State was merely restating or clarifying J.R.'s previous answer where she specifically stated that Perez put his fingers inside of her vagina to check for semen. Because the State's questions of J.R. were not leading, an objection made by defense counsel on that basis would not have been successful. Perez has not demonstrated that his counsel provided deficient performance in this regard.

## V. CONCLUSION

For the reasons set forth above, we affirm Perez' convictions and sentences.

AFFIRMED.

- 19 -